# United States Court of Appeals
## For the First Circuit

No. 12-2335

YANG ZHAO-CHENG,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Torruella and Lipez, Circuit Judges.

Scott Bratton and Margaret Wong & Associates Co., LPA on brief for petitioner.
Katherine A. Smith, Office of Immigration Litigation, Civil Division, Department of Justice, Stuart F. Delery, Acting Assistant Attorney General, Civil Division, and Derek C. Julius, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

August 1, 2013

**LYNCH, Chief Judge.** Zhao-Cheng Yang,[1] a native and citizen of the People's Republic of China, was denied asylum and was ordered excluded in 1998. He did not leave. In 2012, he sought to reopen proceedings on the basis of changed circumstances arising in his country of nationality. He now petitions for judicial review of an order from the Board of Immigration Appeals (BIA) denying his motion to reopen. Because the BIA did not abuse its discretion in determining that Yang failed to demonstrate changed country circumstances, it was not an abuse of discretion for the BIA to deny his motion to reopen, and, accordingly, we deny his petition for review.

## I.  Background

As a teenager in China, Yang was expelled from school after protesting the school-attendance fee. Believing that he had no future in China, and fearing that his actions and presence would expose his parents to harassment, Yang hired a smuggler to take him out of China unlawfully and to bring him to the United States. Yang attempted to enter the United States in 1996. He was denied admission and was placed in exclusion proceedings.[2]

---

[1] Petitioner's name appears in various formulations in the documents before this Court, but "Yang" seems to be his last name, and we will refer to him accordingly.

[2] The Immigration and Naturalization Service commenced exclusion proceedings with a Form I-122, charging Yang as excludable as a noncitizen seeking to enter the United States for the purposes of performing labor without a labor certification under 8 U.S.C. § 1182(a)(5)(A)(I) and as a noncitizen not in

In 1997, Yang filed an asylum application, claiming that, because he had left China unlawfully, if he returned, he could face corporal punishment, fines, and incarceration. He also claimed that he feared returning because of the Chinese government's forced family-planning policies. In 1998, an Immigration Judge (IJ) denied Yang's asylum application. Yang appealed to the BIA, but the appeal was dismissed on December 8, 2000, because Yang failed to file a brief in support of his appeal.

In 2012, Yang filed with the BIA a motion to reopen proceedings. A motion to reopen generally must be filed within ninety days of the final administrative decision. See 8 C.F.R. § 1003.2(c)(2), (3). The final administrative decision in this case was the dismissal of Yang's appeal on December 8, 2000, twelve years before he filed his motion to reopen. Yang contended that his motion was not subject to the ninety-day rule because 8 C.F.R. § 1003.2(c)(3)(ii) permits the filing of a motion to reopen more than ninety days after the final administrative decision if the motion is brought to reapply for asylum based on changed circumstances arising in the country of nationality, and if the

_____

possession of a valid entry document, under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Subsequent to Yang's exclusion proceedings, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, div. C., 11 Stat. 3009-546 (codified as amended in scattered sections of 8 and 18 U.S.C.) replaced exclusion proceedings with removal proceedings. See 8 U.S.C. § 1229a(e)(2).

movant has material evidence that was not available and could not have been discovered or presented at the previous hearing.

Specifically, Yang claimed that he had converted to Christianity in 2011 and that, since the time of his 1998 hearing, circumstances surrounding the practice of Christianity in China had changed -- namely, persecution of unregistered[3] Christian groups had increased. Yang asserted that he would continue, on return to China, to practice his religion by attending an unregistered "house" church and by spreading the gospel to others. He would not attend a registered, government-sanctioned church because he does not believe that such churches truly teach religion. In light of the Chinese government's persecution of unregistered-church members, he asserted he would face a constant threat of punishment.

The BIA determined that Yang had failed to establish changed circumstances in China,[4] and so his untimely motion did not

---

[3] The Chinese government requires all religious groups to register with government religious affairs bureaus and to operate under the supervision of official "patriotic" religious organizations. See, e.g., U.S. Dep't of State, China Country Report on Human Rights Practices for 1997 (1998), available at http://www.state.gov/www/global/human_rights/1997_hrp_report/china.html.

[4] Before addressing Yang's evidence of changed circumstances, the BIA noted -- correctly -- that Yang's changed personal circumstances, his 2011 conversion to Christianity, did not constitute changed country circumstances and thus could not form the basis of his motion. See, e.g., Larngar v. Holder, 562 F.3d 71, 77 (1st Cir. 2009) (affirming that "a change in personal circumstances should not qualify as a change in country circumstances").

qualify for the exception to the ninety-day rule. Accordingly, the BIA denied the motion to reopen. This petition for review followed.

## II. Discussion

"We review the denial of a motion to reopen for abuse of discretion." Romer v. Holder, 663 F.3d 40, 42 (1st Cir. 2011). Yang argues it was an abuse of discretion for the BIA to conclude that he had failed to establish changed circumstances in China. Not so.

Yang bore the burden of establishing that circumstances in China surrounding the persecution of unregistered Christian groups changed between 1998 and 2012. See Larngar v. Holder, 562 F.3d 71, 76 (1st Cir. 2009) ("It is well-established that an applicant bears the burden of establishing changed country circumstances for purposes of § 1003.2(c)(3)(ii)."); 8 C.F.R. § 1003.2(c)(1). To satisfy that burden, Yang needed to provide the BIA information regarding the level of persecution of unregistered Christian groups in China in both 1998 and 2012. He provided evidence that persecution in 2012[5] was severe, rising to the level of detentions and beatings of unregistered-church members, and referred to his filings in 1998. The BIA determined that he had

---

[5] To be precise, when Yang filed his motion to reopen in 2012, he submitted the most recent evidence available, which consisted of reports from 2011 and 2010.

failed to provide evidence that would support a finding of changed circumstances in this time period.

The BIA first considered a Human Rights Watch World Report for 1997, which Yang had submitted at his 1998 hearing. The BIA noted that the report did not cover the relevant time period, for it reflected the circumstances in 1996. Even if the report had reflected the circumstances in 1998, the BIA determined that the report would not have supported a finding that the level of persecution facing unregistered Christian groups in China had changed between 1998 and 2012. The report detailed a campaign that forced all churches to register or face dissolution, resulting in beating and harassment of congregants, closing of churches, and numerous arrests, fines, and imprisonments. The evidence Yang submitted of circumstances prevailing in 2012 details this same type of severe persecution.

The BIA next discussed the fact that Yang cited portions -- but did not provide to the BIA the full versions -- of U.S. State Department Country Reports on China from 1997 through 2009. The BIA declined to take administrative notice of the full reports, noting that Yang bore the burden of submitting them. Yang argues that the BIA abused its discretion in refusing to take notice of the reports in their entirety, since he selectively quoted from them in his motion to reopen. He is wrong. "[A]lthough the BIA is empowered to take administrative notice of

'commonly known facts such as current events or the contents of official documents,' it is not compelled to do so."  <u>Kaihua Huang</u> v. <u>Holder</u>, 312 F. App'x 420, 422 (2d Cir. 2009) (citation omitted) (quoting 8 C.F.R. § 1003.1(d)(3)(iv)) (citing <u>Hoxhallari</u> v. <u>Gonzales</u>, 468 F.3d 179, 186 n.5 (2d Cir. 2006) (per curiam)).  That these reports are available on the Internet does not relieve Yang of his burden to submit to the BIA evidence supporting his claim. <u>See</u> 8 C.F.R. § 1003.2(c)(1) ("A motion to reopen proceedings . . . shall be supported by affidavits or other evidentiary material.").

Yang's motion stressed the fact that, according to the 2001 report, official repression of unregistered Christian groups had "eased somewhat," while reports from later years showed an increase in such repression.  That religious persecution had "eased somewhat" by 2001 told the BIA nothing about the persecution that existed in 1998 -- the relevant year.  Importantly, as the BIA observed, what this statement demonstrates is that slight temporal fluctuation in the level of ever-prevailing persecution is, itself, a continuing circumstance -- not a "changed circumstance[]" as required by the regulation.  <u>See</u> 8 C.F.R. § 1003.2(c)(3)(ii).  The BIA did not abuse its discretion in concluding that the State Department reports did not support a finding of changed circumstances.

The BIA lastly considered the 2004 implementation of a new religious regulation program in China, the State Administration

-7-

for Religious Affairs, which Yang had cited in his motion.  The BIA permissibly determined that, according to the evidence presented by Yang, the new regulations did not alter the amount of persecution faced by unregistered Christian groups, as the same levels of persecution persisted both before and after 2004.  Yang has given us no reason to conclude that this determination by the BIA was an abuse of discretion.

In his brief to this Court, Yang references one further source of information: the U.S. State Department Country Report on China from 1995 from his original asylum application.  That report describes the circumstances that prevailed in China years before Yang's 1998 hearing.  The report also does not indicate that those circumstances were materially different from circumstances in 2012.  In an attempt to downplay the level of persecution facing unregistered Christian groups in the past, Yang claims that the report states merely that the Chinese government "intermittently harassed unregistered churches."  But this is not an accurate characterization of the report, which, in actuality, notes that unregistered Christian churches were subject to raids and forced closings, and their members were subject to detention.

There was no need for the BIA to reach the issue of whether Yang made out a prima facie case for eligibility for asylum.  See, e.g., Gi Kuan Tsai v. Holder, 505 F. App'x 4, 9 (1st Cir. 2013) (stating BIA need not address whether noncitizen made

-8-

prima facie case for eligibility for asylum where BIA concluded in its discretion that noncitizen failed to demonstrate changed circumstances, thus failing to make showing necessary to file untimely motion to reopen).

## III. <u>Conclusion</u>

For the reasons stated above, Yang's petition for review is <u>DENIED</u>.