# United States Court of Appeals
## For the First Circuit

No. 13-1232

HAIZEM LIU,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Torruella and Thompson, <u>Circuit Judges</u>.

<u>Joshua Bardavid</u> on brief for petitioner.
<u>Richard Zanfardino</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, <u>Stuart F. Delery</u>, Acting Assistant Attorney General, Civil Division, and <u>Terri J. Scadron</u>, Assistant Director, were on brief for respondent.

August 13, 2013

**LYNCH, <u>Chief Judge</u>**.  Haizem Liu,[1] a native and citizen of the People's Republic of China, was denied asylum and withholding of removal, as well as protection under the U.N. Convention Against Torture (CAT), and ordered removed to China by an Immigration Judge (IJ) in June 2003.  The Board of Immigration Appeals (BIA) affirmed the IJ's removal order in 2004.  But Liu did not leave the United States.

In June 2012, about eight years later, she sought to reopen proceedings on the ground of changed country conditions in China.  The BIA denied this motion to reopen and Liu now petitions for review of that denial.

We deny the petition.  This is one of a series of cases in which we have similarly upheld the BIA's determination that there have not been changed country conditions for Christians returned to China who wish to practice in unregistered churches, such as to warrant an exception to the time limits on motions to reopen.  <u>See generally</u> <u>Yang Zhao-Cheng</u> v. <u>Holder</u>, No. 12-2335, 2013 WL 3942931 (1st Cir. Aug. 1, 2013); <u>Xiu Xia Zheng</u> v. <u>Holder</u>, 502 F. App'x 13 (1st Cir. 2013) (per curiam); <u>Hang Chen</u> v. <u>Holder</u>, 675 F.3d 100 (1st Cir. 2012); <u>Le Bin Zhu</u> v. <u>Holder</u>, 622 F.3d 87 (1st Cir. 2010).

---

[1] Petitioner's most recent affidavit states that her name is Hai Zhen Liu.  We use the name that appears in the immigration records and is used by the government in its briefing.

Liu entered the United States without inspection on August 30, 2001 near Calexico, California. She was detained that same day and on August 31, 2001, was charged with inadmissability under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being inspected or paroled. Liu conceded her removability, and sought asylum and withholding of removal on the basis that she feared persecution because of her practice of Falun Gong. The IJ denied both forms of relief on June 19, 2003 and ordered Liu removed to China. Liu appealed to the BIA, which summarily affirmed the IJ's decision on September 2, 2004. Petitioner did not seek judicial review.

On June 11, 2012, Liu filed a motion with the BIA to reopen her case. A motion to reopen generally must be filed within ninety days of the final administrative decision. See 8 C.F.R. § 1003.2(c)(2), (3). Liu claimed that she had converted to Christianity[2] in November 2011. She began attending services at the Church of Grace to Fujianese, a Protestant church in Chinatown in New York. Her motion to reopen claimed that since her last appearance in immigration court in March 2003, "conditions related to treatment of Christians in China" had "fundamentally changed and . . . significantly worsened." She argued that she fell within the

---

[2] In her original asylum application filed in August 2002, Liu had identified her religion as "Buddhism."

-3-

"changed country conditions" exception to the ninety-day rule.  See 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii).

Liu submitted a number of documents, including her new affidavit and new asylum application[3] and a letter from a friend in China who claimed to have been jailed in November 2011 because of being Christian.  In addition, she provided a U.S. State Department Country Report on Human Rights Practices in China published in 2003, two Congressional-Executive Commission on China Annual Reports, a 2009 State Department Country Report, a 2010 State Department International Religious Freedom Report, and various newspaper articles and reports from other organizations.

In a January 22, 2013 opinion, the BIA denied Liu's motion to reopen.  The BIA first rejected the motion because Liu's conversion to Christianity "represent[ed] a change in personal circumstances" and not a change in country conditions.  Turning to the purported change in country conditions, the BIA determined that the letter from Liu's friend was to be given "very little weight" because it lacked detail, was written for purposes of the proceedings, and did not establish a change in country conditions. The BIA reasoned that the other documentation did not show a worsening of conditions in China for Christians, but rather showed

_____

[3] Liu admitted in her affidavit that the Chinese government allows some churches to operate, but they must be registered.  She said she would not be willing to attend a registered church because the ministers work for the government and they are not "genuine churches."  Hence, she would attend unregistered churches.

-4-

that mistreatment of some Christians in China was a "longstanding and ongoing problem." Finally, the BIA stated that there was not adequate evidence that Liu would be persecuted upon her return to China because there was no evidence that Chinese authorities knew or were likely to become aware of Liu's adoption of Christianity.

Liu makes three challenges in her petitions for review: (1) that the BIA erred in "rejecting" the letter from Liu's friend; (2) that the BIA abused its discretion in finding no change in country conditions;[4] and (3) that the BIA erred in finding that she did not make a prima facie case of persecution on account of her religious beliefs because Chinese authorities would not likely discover her religious activity. We reject Liu's first two challenges and have no need to reach the third.

II.

A. Legal Background

Motions to reopen removal proceedings are disfavored. See, e.g., Hang Chen, 675 F.3d at 105 (noting compelling public interest in finality); Le Bin Zhu, 622 F.3d at 91 (acknowledging strong public interest in promptly ending litigation). As a result, the BIA enjoys wide latitude in deciding such motions and we review the BIA's decision for abuse of discretion. Le Bin Zhu,

---

[4] Notably, Liu does not challenge the BIA's determination that her conversion to Christianity constitutes a change in personal circumstances, not a change in country conditions, and thus cannot serve as a basis to reopen.

622 F.3d at 91. That is, we uphold the decision "unless the complaining party can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way." Id. (quoting Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007)) (internal quotation marks omitted).

Ordinarily, motions to reopen must be submitted within ninety days of the final administrative decision. Raza, 484 F.3d at 127 (citing 8 C.F.R. § 1003.2(c)(2)). One exception is if "[the] alien makes a convincing demonstration of changed conditions in his homeland." Id. The motion must present new facts that will be proven at a hearing if the motion is granted. 8 C.F.R. § 1003.2(c)(1). Additionally, the new evidence must have been unavailable and undiscoverable at the time of the former hearing and it must be material. Le Bin Zhu, 622 F.3d at 92; 8 C.F.R. § 1003.2(c)(3)(ii). Particularly relevant here, the evidence "must demonstrate the intensification or deterioration of country conditions, not their mere continuation." Tawadrous v. Holder, 565 F.3d 35, 38 (1st Cir. 2009).

B. The Letter from Liu's Friend in China

Liu misrepresents the record in first arguing that the BIA erred "in rejecting the supporting letter of Ms. Liu's friend in China." The BIA did not reject the letter, but stated that the letter would receive "very little weight."

-6-

The BIA did not abuse its discretion in making that determination and it provided sufficient reasoning. The BIA justifiably noted that the letter was "scant on detail." The letter is only four short paragraphs and merely states that the friend was detained for being a Christian and that she believes Liu would be arrested if Liu returned to China and continued to attend church. It provides few specifics about the circumstances of the friend's arrest. The BIA also permissibly considered that the letter was prepared for the reopening motion.[5] See Gi Kuan Tsai v. Holder, 505 F. App'x 4, 8 (1st Cir. 2013) (BIA within its discretion to decide letters did not establish materially changed circumstances where "each was produced for the purpose of reopening [the] final order of removal and written by the petitioner's family or a person close to the petitioner"); cf. Zheng v. Mukasey, 546 F.3d 70, 72 (1st Cir. 2008) ("Absent substantiation, self serving affidavits from petitioner and her immediate family are of limited evidentiary value."). In any event, the letter offers no insight into how or if conditions in China had changed, and would not have satisfied Liu's burden.

---

[5] Liu wrongly argues that the BIA could not discount the letter for this reason because "Ms. Liu is required by both statute and regulation to submit all reasonably available evidence to corroborate her claims on motion." The reason for which the letter was prepared provides insight into its likely veracity and reliability, as does its lack of detail and conclusory assertions.

C.  <u>Change in Country Conditions Determination</u>

In determining if evidence submitted in support of a motion to reopen demonstrates a material change in country conditions justifying reopening of proceedings, the BIA "compare[s] the evidence of country conditions submitted with the motion to those that existed at the time of the merits hearing below." <u>In re S-Y-G-</u>, 24 I. & N. Dec. 247, 253 (BIA 2007).

The BIA reasonably concluded that the mistreatment of Christians who attend unregistered churches had not materially worsened since 2003 but rather was a longstanding and ongoing condition.  The 2003 State Department Country Report, which serves as a baseline, stated that government respect for religious freedom was "poor" and that "crackdowns" against unregistered groups, "including underground Protestant and Catholic groups, continued." In some areas religious services were broken up and leaders and followers harassed, fined, beaten, and detained.  Other materials show that churches were demolished or closed in that time frame and certain church leaders had been arrested and were missing since before 2003.

Several of Liu's documents did not show an escalation in mistreatment of Christians post-2003.  The 2009 State Department Country Report stated that "[t]he government <u>continued</u> to strictly control religious practice and repress religious activity outside government-sanctioned organizations and registered places of

-8-

worship" (emphasis added).  Likewise, the 2010 Congressional-Executive Commission on China Annual Report stated that officials "<u>continued</u> . . . to harass and, in some cases, detain and imprison members of unregistered Protestant churches, while also razing church property" (emphasis added), and "<u>continued</u> to arbitrarily harass, intimidate, detain, or imprison some of the estimated 50 to 70 million Chinese Protestants who worship in China's unregistered congregations" (emphasis added).[6]

Other documents evidenced improved treatment of Christians in China since 2003.  A 2010 Immigration and Refugee Board of Canada report states that "[s]ources report that many Christian groups, even those which are unregistered, are becoming more public and able to carry out their activities openly."  It cites one researcher finding "reduced hostility" to Christianity in China.

Liu heavily relies on news articles stating that the degree of persecution has increased and that a crackdown on unregistered churches was coinciding with "the most expansive assault on dissent in China in years."  The non-government group, China Aid, claims an almost 200% increase in the "overall situation of persecution" against Christians from 2006 to 2010.  The BIA is,

_____

[6] The 2009 Report made similar findings that "[o]fficials continue to subject Protestants who refuse to register to harassment, detention, imprisonment, and forced church closure."

of course, not bound by an outside group's categorization of what counts as persecution or its estimates.

The BIA did not abuse its discretion in giving greater weight to the other documents, including the State Department reports and Congressional-Executive Commission reports, that describe the problems as ongoing. See Hang Chen, 675 F.3d at 108 (stating that BIA must consider evidence contradicting State Department reports but noting that State Department reports are of "high probative value"). Nor did the BIA need to discuss each piece of evidence individually. See Raza, 484 F.3d at 128 ("An agency is not required to dissect in minute detail every contention that a complaining party advances. It is enough if the agency fairly considers the points raised by the complainant and articulates its decision in terms adequate to allow a reviewing court to conclude that the agency has thought about the evidence and the issues and reached a reasoned conclusion."). The BIA considered the evidence in its entirety and made a reasoned judgment in exercising its discretion.

Contrary to Liu's argument, our circuit's decision in Smith v. Holder, 627 F.3d 427 (1st Cir. 2010), does not compel a different result. Smith involved a motion to reopen by an activist political leader based on a claim of political persecution that followed a swell of electoral support for the political opposition in Zimbabwe, which led to a crackdown by the ruling party on

opposition figures. Smith presented strong new evidence of changed conditions. Among the new evidence was the attack on and destruction of his family's home in retaliation for their political activity, the killing of a cousin, and a new government program under which returning failed asylum seekers were harshly interrogated and beaten. Id. at 431. We held that the BIA committed an error of law in concluding that, because the petitioner was not in the country to experience changed country conditions, he had not established a material change. Id. at 435-36. The BIA did not rely on any such reasoning here. Further, the evidence in Smith did establish intensification and not a mere continuation of earlier conditions. Id. at 436 n.9. The petitioner in Smith presented materials showing that his family had been intimidated and physically attacked for their political views. Id. at 431. He also presented reports from government and non-government entities that agreed that human rights abuses in his home country were worsening. Id. at 431-32. That simply is not the case here.

Where a petitioner fails to establish changed circumstances, it is not necessary to reach the issue of whether she has made out a prima facie case for relief. See, e.g., Gi Kuan Tsai, 505 F. App'x at 9. Hence, we do not reach that issue here.

III.

The BIA did not abuse its discretion in concluding that Liu did not make a "convincing demonstration of changed conditions" in China for Christians practicing in unregistered churches, as needed to warrant reopening the proceedings. Le Bin Zhu, 622 F.3d at 92 (quoting Raza, 484 F.3d at 127). Accordingly, the petition for review is denied. So ordered.