# United States Court of Appeals
## For the First Circuit

No. 14-1159

XIN QIANG LIU,

Petitioner,

v.

LORETTA E. LYNCH,[*]
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lipez, and Barron,
Circuit Judges.

Joshua Bardavid and Bardavid Law, on brief for petitioner.
Holly M. Smith, Senior Litigation Counsel, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, Stuart F. Delery, Assistant Attorney General, Civil Division, and Eric W. Marsteller, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

September 11, 2015

---

[*]    Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Loretta E. Lynch is substituted for former Attorney General Eric H. Holder, Jr. as respondent.

**TORRUELLA, <u>Circuit Judge</u>.** Petitioner Xin Qiang Liu ("Liu"), a native and citizen of China, seeks judicial review of the Board of Immigration Appeals' ("BIA") order dismissing his appeal from an Immigration Judge's ("IJ") denial of his motion to rescind an in absentia removal order and motion to reopen removal proceedings. After careful consideration, we must deny Liu's petition.

## I. Background

Liu entered the United States without inspection at St. Thomas, United States Virgin Islands, on or about March 18, 1998. On that same date, the Immigration and Naturalization Service ("INS") served Liu with a notice to appear, charging him with removability as an alien present in the United States without having been admitted or paroled. See 8 U.S.C. § 1182(a)(6)(A)(i).[1] INS advised Liu of his rights in Mandarin, and Liu claimed to understand them.

While in custody, Liu retained former attorney Robert Porges ("Porges") to represent him in the removal proceedings.[2] In

---

[1]  The INS ceased to exist after the Homeland Security Act of 2002 transferred its functions to the Department of Homeland Security ("DHS").

[2]  On February 11, 2002, Porges pleaded guilty to (1) conspiracy to engage in racketeering activity in violation of 18 U.S.C. § 1962(d); (2) engaging in a pattern of racketeering activity in violation of 18 U.S.C. § 1546(a); and (3) conspiracy to commit tax fraud in violation of various sections of Title 26 of the United States Code. Porges admitted that he participated in the preparation and submission of fraudulent documents related to

a motion for bond determination, Porges indicated that Liu intended to seek political asylum in the United States, and that following his release on bond, Liu would reside with a cousin in Brooklyn, New York. The immigration court scheduled a hearing for June 23, 1998, and served Porges with notice of the hearing.

On June 23, 1998, attorney Víctor Ocampo ("Ocampo") from Porges's law firm appeared telephonically on Liu's behalf from his office in New York. Liu, however, failed to appear at the hearing. Ocampo explained that Liu was absent because he was in Texas helping his uncle with an emergency. Unpersuaded by Ocampo's excuse for Liu's absence, the IJ ordered Liu removed in absentia. Liu avers that Porges never informed him of his hearing date, and upon contacting Porges's law firm, he was told his hearing date had already passed. After learning of the removal order, Liu sought assistance from a legal services agency in Manhattan, New York, which prepared a motion to reopen for him.[3] According to Liu, he did not understand English, and simply signed the documents the agency had prepared for him. As a result, Liu's motion was filed as a pro se motion to reopen and to change venue on August 7, 1998.

---

claims for political asylum. Consequently, Porges was suspended from practicing law before the BIA, the immigration courts, and the INS. Subsequently, Porges was disbarred.

[3] According to Liu, he hired individuals whom he believed to be lawyers, but turned out to be part of a non-attorney "travel agency." The agency prepared his motion to reopen, and Liu simply signed where instructed.

Contrary to the excuse provided by Ocampo, Liu's motion included a doctor's note dated June 22, 1998 (the day before his removal hearing), indicating that he had been seen by a doctor on that date for lower back pain and sciatica and that the doctor recommended bed rest as treatment. On August 25, 1998, the IJ denied Liu's motion to reopen. Liu did not appeal the IJ's decision to the BIA. Following the IJ's denial of his motion to reopen, Liu remained in the United States without authorization.

On January 13, 2012, almost fourteen years after he was ordered removed, Liu filed a motion to rescind the in absentia removal order and a motion to reopen his removal proceedings to apply for asylum and related relief. In his motion, Liu sought equitable tolling of the 180-day filing deadline to rescind a removal order on the basis of ineffective assistance of counsel and lack of notice, alleging that Porges's misconduct had caused him to miss his removal hearing. Liu also sought to reopen his removal proceedings to apply for asylum and related relief due to his fear of religious persecution. According to Liu, since February 2011 he has attended weekly services at the New Life Chinese Alliance Church in Flushing, New York. Liu claims that he became deeply religious, regularly participated in bible study and church choir, and was officially baptized on April 23, 2011. Liu asserts that after reading news articles and media reports documenting China's persecution of Christians, he developed a fear that he would not be

-4-

able to freely worship if he returned to China and would be forced to attend private illegal gatherings, where members are regularly targeted for arrest and detention. Liu averred that since the issuance of his in absentia removal order, conditions for Christians in China had materially worsened, warranting asylum on the basis of changed country conditions.

In a written decision issued on March 12, 2012, the IJ denied Liu's motion to rescind the in absentia removal order and motion to reopen removal proceedings as untimely and numerically barred. The IJ explained that Liu did not qualify for the changed country conditions exception to the numerical and temporal limitations on motions to reopen because his motion was based solely on changed personal circumstances as a result of his conversion to Christianity. Specifically, the IJ found that the evidence Liu submitted, which itself did not show that conditions had worsened for Christians in China, was not material because Liu only converted to Christianity in 2011, and was not a Christian in 1998. Therefore, the IJ determined that changed personal circumstances could not serve as the basis for a motion to reopen on the basis of changed country conditions. The IJ also determined that Liu failed to provide any reason to warrant equitable tolling of the 180-day filing deadline for a motion to rescind an in absentia removal order given that Liu had not indicated any steps

he took in the interim fourteen years to remedy his immigration status.[4] Liu appealed the IJ's decision to the BIA.

The BIA dismissed Liu's appeal on September 11, 2013. In addition to adopting and affirming the IJ's decision to deny Liu's motions, the BIA added that waiting fourteen years to raise his claim of ineffective assistance of counsel did not amount to due diligence. Furthermore, the BIA noted that Liu's conversion to Christianity was a change in personal circumstances and not a change in country conditions, and also that China's restrictions on religious practices were a continuation of previous policies, rather than an increase in religious persecution. Finally, the BIA concluded that Liu had failed to show that authorities in China either knew of or would likely become aware of his religious conversion if he returned to China. This timely petition for review followed.

---

[4] The IJ also determined that the notice provided to Liu's counsel was sufficient to charge Liu with notice under §§ 239(a)(1) and (2) of the Immigration and Naturalization Act ("INA"). The IJ further noted that Liu's claims that he did not have notice was contradicted by statements made in his August 1998 pro se motion to reopen, and that because Liu was personally served with a notice to appear, and was read his rights in Chinese, he was at least aware that removal proceedings had been initiated against him. Lastly, the IJ determined that even if Liu's claim based on ineffective assistance of counsel was not time-barred pursuant to 8 C.F.R. § 1003.23(b)(4)(ii), it would fail on the merits because Liu did not establish that his failure to appear was his counsel's fault.

## II. Discussion

Liu alleges that the IJ abused its discretion in determining that Liu failed to establish changed country conditions and construing his motion to reopen as based only on changed personal circumstances. Though Liu concedes that his personal circumstances did change as a result of his conversion to Christianity, he avers that his motion is explicitly based on the worsening of conditions for Christians in China. Furthermore, Liu claims that the IJ failed to consider the record as a whole, and ignored reliable evidence showing an increase in attacks on Christians in China. In addition, Liu asserts that the BIA ignored his claim that he would continue to engage in unauthorized religious activity if he returned to China by joining an underground church and openly preaching the gospel, and therefore, Liu contends that the BIA erred in determining that his religious activity would not be targeted in China. Liu further argues that the evidence of Porges's disbarment and conviction was circumstantial corroboration for his claim that his failure to appear and initial motion to reopen were not his own fault. Liu also avers that he has satisfied all of the requirements set forth in Matter of Lozada, 19 I. & N. Dec. 637, 639 (BIA 1988) for making an ineffective assistance of counsel claim. Liu suggests that Porges's failure to inform him of his hearing date constituted ineffective assistance of counsel sufficient to amount to an

exceptional circumstance that would entitle him to reopen his proceedings. Accordingly, Liu contends that the IJ and BIA's failure to find that ineffective assistance of counsel caused him to miss his hearing amounted to reversable error. We are thus faced with two issues: (1) the merits of Liu's motion to rescind the in absentia removal order on the basis of extraordinary circumstances in the form of ineffective assistance of counsel and (2) the disposition of Liu's motion to reopen on the basis of changed country conditions.

This Court has jurisdiction over the BIA's September 2013 decision to dismiss Liu's appeal of the IJ's decision pursuant to the Immigration and Nationality Act ("INA"), which gives the courts of appeals exclusive jurisdiction to review final orders of removal. See 8 U.S.C. § 1252(a)(5). Furthermore, "[f]or this court to have jurisdiction to review a final order of removal, the alien must have 'exhausted all administrative remedies available to the alien as of right.'" Meng Hua Wan v. Holder, 776 F.3d 52, 56 (1st Cir. 2015) (citing 8 U.S.C. § 1252(d)(1)). "The exhaustion requirement is satisfied where . . . the agency chooses to address the merits of a particular issue, regardless of whether the alien raised that issue." Id. We also have "jurisdiction to review the BIA's decision to deny equitable tolling of the time and number limitations" on motions to reopen. Neves v. Holder, 613 F.3d 30,

33 (1st Cir. 2010). Therefore, Liu's petition for review is properly before us.

Motions to reopen are generally "disfavored as contrary to the compelling public interests in finality and the expeditious processing of proceedings." Xue Su Wang v. Holder, 750 F.3d 87, 89 (1st Cir. 2014) (quoting Nascimento v. Mukasey, 549 F.3d 12, 15 (1st Cir. 2008)).

We review the BIA's decisions under a deferential abuse of discretion standard. Kucana v. Holder, 558 U.S. 233, 242 (2010) (citing INS v. Doherty, 502 U.S. 314, 323 (1992)). This standard requires a movant to "show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way." Xue Su Wang, 750 F.3d at 89 (quoting Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007). This Court accepts the BIA's findings of fact under the "substantial evidence" standard, which makes its findings conclusive if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Hasan v. Holder, 673 F.3d 26, 33 (1st Cir. 2012) (quoting Guzmán v. INS, 327 F.3d 11, 15 (1st Cir. 2003)). We examine the BIA's legal conclusions de novo, while "remaining cognizant of and deferential to the BIA's expertise in applying the relevant statutory framework." Hang Chen v. Holder, 675 F.3d 100, 106 (1st Cir. 2012) (citing Matos-Santana v. Holder, 660 F.3d 91, 93 (1st Cir. 2011)). Therefore, "[w]e reverse only if 'any

reasonable adjudicator would be compelled to conclude to the contrary.'" Scatambuli v. Holder, 558 F.3d 53, 58 (1st Cir. 2009) (quoting 8 U.S.C. § 1252(b)(4)(B)). Finally, "[w]hen the BIA adopts and affirms the IJ's ruling but also examines some of the IJ's conclusions, this Court reviews both the BIA's and the IJ's opinion." Perlera-Sola v. Holder, 699 F.3d 572, 576 (1st Cir. 2012) (citing Matovu v. Holder, 577 F.3d 383, 386 (1st Cir. 2009)).

Because motions to reopen and removal orders are governed by a statutory and regulatory complex, we first note the regulatory provisions relevant to Liu's petition. Motions to reopen are "generally limited both numerically and temporally." Meng Hua Wan, 776 F.3d at 56. Specifically, pursuant to 8 C.F.R. § 1003.23(b)(1), a party may file only one motion to reopen, and that motion must be filed within ninety days of the final administrative order. There are, however, two pertinent exceptions to the filing deadlines. First, "an in absentia order of removal may be reopened if the alien can show either that he did not receive proper notice of the removal proceedings or that his failure to appear was due to exceptional circumstances beyond his control." Meng Hua Wan, 776 F.3d at 56 (citing 8 C.F.R. § 1003.23(b)(4)(iii)(A); Kozak v. Gonzáles, 502 F.3d 34, 35 (1st Cir. 2007)). A motion to reopen based on exceptional circumstances must be filed within 180 days of the removal order. 8 C.F.R. § 1003.23(b)(4)(iii)(A)(1). Second, a petitioner may file a motion to reopen at any time if he brings

the motion seeking to apply for asylum based on changed circumstances arising in the country of nationality, and has material evidence that was not available and could not have been discovered or presented at the previous hearing.  Id. § 1003.2 (c)(3)(ii).  In extraordinary circumstances, parties may invoke equitable tolling to extend statutory deadlines when they are unable to comply with them through no fault of their own, although we have not decided whether such tolling is available in the immigration context.  Neves, 613 F.3d at 36.

Here, as the government correctly notes and Liu does not dispute, Liu's motion to reopen based on exceptional circumstances was untimely because the removal order was entered on June 23, 1998, and Liu did not file his motion to reopen until January 13, 2012, nearly fourteen years after the order and well beyond the 180-day regulatory deadline.  Therefore, Liu must rely on the doctrine of equitable tolling to bring his motion to reopen based on exceptional circumstances.  It is a well "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990);  see also Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011).  Though Liu notes in his opening brief that the BIA found that he failed to exercise the requisite due diligence to warrant equitable tolling, Liu makes no argument in his opening brief to

-11-

show that he is in fact entitled to equitable tolling. Consequently, because Liu argues that he exercised the requisite due diligence to warrant equitable tolling for the first time in his reply brief, the issue is waived. See Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 299 (1st Cir. 2000) ("We have held, with a regularity bordering on the monotonous, that issues advanced for the first time in an appellant's reply brief are deemed waived.").[5]

---

[5] Assuming arguendo that the issue is not waived, the BIA did not abuse its discretion in determining that Liu failed to demonstrate the requisite due diligence to warrant equitable tolling of the 180-day filing deadline.

When applicable, "equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." Neves, 613 F.3d at 36 (quoting Wallace v. Kato, 549 U.S. 384, 396 (2007)). To establish equitable tolling, a petitioner must demonstrate that: "(1) he has been pursuing his rights diligently; and (2) some extraordinary circumstance stood in his way." Bead v. Holder, 703 F.3d 591, 594 (1st Cir. 2013) (quoting Neves, 613 F.3d at 36) (internal quotation marks omitted). Indeed, a party who fails to exercise due diligence may not pursue equitable tolling at all. See Chedid v. Holder, 573 F.3d 33, 37 (1st Cir. 2009); Neves, 613 F.3d at 36 ("A party seeking equitable tolling must have diligently pursued his rights for the entire period he seeks tolled, not merely once he discovers the underlying circumstances warranting tolling."); Beltre-Veloz v. Mukasey, 533 F.3d 7, 11 (1st Cir. 2008) ("It cannot be gainsaid that due diligence is a sine qua non for equitable tolling.").

Notably, the record contains no information regarding any steps Liu took to remedy his immigration status in the nearly fourteen years since his removal order. See Chedid, 573 F.3d at 37 (finding that the BIA's determination was not "arbitrary or capricious" where petitioner's affidavit provided no information regarding the actions he took in the one-year period after his removal order); Beltre-Veloz, 533 F.3d at 11 ("The critical datum is that the petitioner waited eight years before inquiring into his immigration status, despite knowing both that removal proceedings had commenced

-12-

Moving to Liu's second argument, the temporal bars to motions to reopen do not apply to a petitioner who brings the motion seeking to apply for asylum based on changed circumstances arising in the country of nationality, and who has material evidence that was not available and could not have been discovered or presented at the previous hearing.

Liu contends that he is entitled to this exception because of the evidence he presented to the IJ and BIA of worsening conditions for Christians in China. In advancing this contention, Liu relies on 8 U.S.C. § 1229a(c)(7)(C)(ii). This provision allows a late motion to reopen, with "no time limit," if "the basis of the motion is to apply for relief under sections 1158 or 1231(b)(3) of this title and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." Id. § 1229a(c)(7)(C)(ii); see, e.g., Sugiarto v. Holder, 761 F.3d 102, 103 (1st Cir. 2014).

To take advantage of the changed country conditions exception, a petitioner must "make[] a convincing demonstration of changed conditions in his homeland." Raza, 484 F.3d at 127. To

and that his work permit had expired. That inordinate period of delay belies any serious assertion of due diligence."). Accordingly, the BIA was well within its discretion in determining that Liu had failed to exercise the requisite due diligence to warrant equitable tolling of the 180-day filing deadline.

-13-

establish changed country conditions, the evidence must demonstrate the "intensification or deterioration of country conditions, not their mere continuation." Tawadrous v. Holder, 565 F.3d 35, 38 (1st Cir. 2009). A petitioner must also establish a link between the evidence and an individualized risk of harm. Id. at 39 (quoting Tandayu v. Mukasey, 521 F.3d 97, 101 (1st Cir. 2008). The petitioner bears the burden of proving changed conditions. Zhao-Cheng v. Holder, 721 F.3d 25, 28 (1st Cir. 2013) (citing Larngar v. Holder, 562 F.3d 71, 76 (1st Cir. 2009)). Accordingly, a petitioner must present new evidence of changed conditions that is material, and, moreover, it must have been unavailable and undiscoverable at the former hearing. 8 C.F.R. § 1003.2(c)(3)(ii); see also Hang Chen, 675 F.3d at 106 (quoting Le Bin Zhu v. Holder, 622 F.3d 87, 92 (1st Cir. 2010)). The BIA "compares the evidence of country conditions submitted with the motion to those that existed at the time of the merits hearing." Haizem Liu v. Holder, 727 F.3d 53, 57 (1st Cir. 2013) (quoting In re S-Y-G-, 24 I. & N. Dec. 247, 253 (BIA 2007)). As we have held previously, a showing of only changed personal circumstances cannot suffice; rather the petitioner must show changed country conditions. "[The petitioner's] changed personal circumstances, [namely his] conversion to Christianity, did not constitute changed country circumstances and thus could not form the basis of his motion. [Thus] . . . a change in personal circumstances should not qualify as a change in country

-14-

circumstances." Yang Zhao-Cheng v. Holder, 721 F.3d 25, n.4 (1st Cir. 2013) (internal citations and quotation marks omitted).

Contrary to Liu's contentions, the BIA and IJ both acted within their discretion in finding that Liu had failed to establish changed country conditions. Although Liu seems to suggest that the IJ erred in not explicitly referencing certain pieces of evidence, the IJ was within its discretion in doing so. In its written decision, the IJ states that Liu "submitted over 500 pages of secondary evidence, mostly cumulative and redundant, and when concerning non-religious issues in China, irrelevant."[6] The IJ explicitly references and compares the 1998 and 2009 State Department Country Reports on China and concluded that "unauthorized Christian groups have been subject to blatant persecution since the time of [Liu's] departure." Like the BIA, the IJ "is not required to dissect in minute detail every contention that a complaining party advances." Raza, 484 F.3d at 128. Rather, "[i]t is enough if the agency fairly considers the points raised by the complainant and articulates its decision in terms adequate to allow a reviewing court to conclude that the agency has thought about the evidence and the issues and reached a

---

[6] A complete review of Liu's evidence supports the IJ's characterization. Liu includes more than fifteen news articles that do not specifically concern the persecution of unregistered Christian groups, but rather concern China's persecution of certain spiritual groups, its detainment of political activists and dissidents, and its suppression of pro-democracy protests.

-15-

reasoned conclusion." Id. Nothing in the record suggests that the IJ completely disregarded the additional evidence Liu submitted, but instead the IJ's decision suggests that the IJ gave greater evidentiary weight to the State Department Reports. See Hang Chen, 675 F.3d at 108 (approving of the highly probative value of State Department Country Reports). Accordingly, Liu's arguments to the contrary amount to an objection to the IJ's factual determinations and the evidentiary weight the IJ accorded to competing pieces of evidence, rather than legal error on the part of the IJ. See Hasan, 673 F.3d at 32-33. Therefore, the IJ's failure to explicitly reference each piece of Liu's submitted evidence does not amount to an abuse of discretion.

In addition, a review of the evidence that the IJ explicitly considered shows that the IJ's determination was supported by reasonable, substantial, and probative evidence. The 1998 State Department Country Report demonstrates that unregistered religious activity in China was restricted and subject to the closure of churches, detainment of leaders, destruction of property, surveillance and other forms of government restrictions. The 2009 State Department Country Report provides that "[t]he government continued to strictly control religious practices and repress religious activity outside government-sanctioned organizations and registered places of worship." (emphasis

added).[7] Therefore, the IJ properly determined that Liu's evidence did not establish the "intensification or deterioration of country conditions," but rather their "mere continuation" based on her comparison of the 1998 and 2009 State Department Country Reports. See Tawadrous, 565 F.3d at 38.[8] In addition, the BIA and IJ did not abuse their discretion in determining that Liu's conversion to Christianity in 2011 was a changed personal circumstance, which cannot serve as the basis for a motion to reopen based on changed country conditions. As we have recently held:

---

[7] This court has considered several of Liu's news articles and reports in recent cases, including the State Department Country Reports from 1997-2009, the 2010 Congressional Executive Commission on China Annual Report, the March 2011 report from ChinaAid, the 2011 U.S. Commission on International Religious Freedom Report, several newspaper articles covering the Shouwang Church in Beijing, and concluded that the evidence does not establish changed country conditions for Christians in China. See generally Zhao-Cheng, 721 F.3d at 28-29; Haizem Liu, 727 F.3d at 57; Li Sheng Wu v. Holder, 737 F.3d 829, 833-34 (1st Cir. 2013).

[8] A review of Liu's additional evidence also supports the IJ's and BIA's finding of ongoing, rather than materially worsened, religious persecution for Christians in China. For example, the 2010 Congressional-Executive Commission on China Report provides that "Chinese authorities continued to ... harass and, in some cases, detain and imprison members of unregistered Protestant churches, while also razing church property." (emphasis added). Similarly, the 2011 Annual Report of the United States Commission on International Religious Freedom explains that "[u]nregistered religious groups ... continue to face severe restrictions, although the government tolerates some religious activity within approved organizations." (emphasis added). Though Liu submits a 2010 Annual China Aid Report, which claims a 193.4% increase in persecution between 2006 and 2010, and several newspaper articles concerning the Shouwang Church in Beijing, the BIA "is not bound by an outside group's categorization of what counts as persecution or its estimates." Haizem Liu, 727 F.3d at 57.

-17-

> [The petitioner's] conversion to Christianity was clearly only a change in personal circumstances. Under the current case law, a change typically will be categorized as a change in personal circumstances, as opposed to a change in country conditions, if the change is self-induced . . . . This prevents aliens from repeatedly reopening their removal proceedings based on changes that are within their control. We treat self-induced changes as changes in personal conditions, even if the change in personal circumstances will expose the alien to persecution in his home country.

Rei Feng Wang v. Lynch, No. 14-1845, 2015 WL 4597553, at *3 (1st Cir. July 31, 2015) (citations and internal quotation marks omitted). Thus, "[a] change in personal circumstances alone does not meet the standard for the exception to the time bar for changed country conditions." Id. at *3; see also Zhao-Cheng, 721 F.3d at 27 n.4 ("Before addressing Yang's evidence of changed circumstances, the BIA noted -- correctly -- that Yang's changed personal circumstances, his 2011 conversion to Christianity, did not constitute changed country circumstances and thus could not form the basis of his motion." (emphasis in original)).[9]

Accordingly, the BIA and IJ acted within their discretion in determining that Liu failed to establish that conditions for

---

[9]  Liu's case is very similar to recent cases decided by this Court. See Haizem Liu, 727 F.3d at 54 ("This is one of a series of cases in which we have similarly upheld the BIA's determination that there have not been changed country conditions for Christians returned to China who wish to practice in unregistered churches, such as to warrant an exception to the time limits on motions to reopen.") (citing Zhao-Cheng, 721 F.3d 25; Xiu Xia Zheng v. Holder, 502 F. App'x. 13 (1st Cir. 2013) (per curiam); Le Bin Zhu, 622 F.3d 87).

Christians in China materially worsened between 1998 and 2012. The evidence consistently represents a mere continuation of religious persecution, rather than an intensification. Therefore, Liu does not qualify for the changed country conditions exception for filing motions to reopen.

### III. <u>Conclusion</u>

We find no error in the proceedings of the IJ and the BIA. Accordingly, Liu's petition for review is denied.

**<u>Denied</u>**.