# United States Court of Appeals
## For the First Circuit

No. 23-1712

HARTONO DJOKRO; WILLIAM SIMAJAYA DJOKRO,

Petitioners,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Kayatta, Lynch, and Montecalvo,
<u>Circuit Judges</u>.

William A. Hahn, with whom Hahn & Matkov was on brief, for petitioners.
Tim Ramnitz, with whom Carmel A. Morgan, Senior Trial Attorney, Office of Immigration Litigation, Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, and Julia J. Tyler, Senior Litigation Counsel, Office of Immigration Litigation were on brief, for respondent.

May 17, 2024

**LYNCH**, **Circuit Judge**.  Hartono Djokro and his son William Djokro petition for review of an order of the Board of Immigration Appeals ("BIA"), issued in August 2023, denying their second untimely motion to reopen, filed on July 26, 2021.

The immigration judge's initial denial of relief from removal was upheld by the BIA in March 2012.  The BIA denied the petitioners' first motion to reopen on February 26, 2013.

We deny this petition seeking review of the BIA's second denial of reopening because the BIA reasonably concluded that petitioners had failed to satisfy the requirements for an exception to late filing contained in 8 U.S.C. § 1229a(c)(7)(C)(ii) and 8 C.F.R. § 1003.2(c)(3)(ii).  See Molina v. Barr, 952 F.3d 25, 31 (1st Cir. 2020).

## I.

Lead petitioner Hartono Djokro and his son, petitioner William Simajaya Djokro, are citizens of Indonesia who entered the United States as nonimmigrant visitors on, respectively, February 3, 2006, and January 23, 2007, and overstayed their visas.

In December 2007, Hartono Djokro filed an application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT), including his son as a derivative applicant. Djokro identified himself and his son as Chinese Indonesian and Catholic.

On March 28, 2008, the Department of Homeland Security ("DHS") served petitioners with notices to appear, charging them with removability pursuant to section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), for having remained in the United States longer than they had been authorized. Petitioners were ordered to appear before an immigration judge on July 3, 2008. William Djokro applied separately for asylum, withholding of removal, and relief under the U.N. Convention Against Torture ("CAT") in April 2009.

On November 16, 2009, an immigration judge ("IJ") denied petitioners' applications for asylum, withholding of removal, and relief under the CAT, after a hearing on October 19, 2009. The IJ found that petitioners were ineligible for relief on several grounds: 1) lead petitioner Hartono Djokro's application for asylum was time-barred; 2) both petitioners had failed to "establish[] that they ha[d] been persecuted in the past," as "the harm" they alleged had been "inflicted upon [them]" was not "severe enough to constitute persecution"; 3) they had failed to "establish a pattern or practice of persecution against either Chinese or Christians" in Indonesia; and 4) they had failed to establish that the Indonesian government had "participate[d]" in "incidents of violence" against Christians or Chinese people or was "unwilling to provide protection." As such, the IJ found that petitioners

were not eligible for asylum or withholding of removal.[1] On December 14, 2009, petitioners (through present counsel) appealed the IJ's decision. On August 31, 2011, while their BIA appeal was pending, petitioners also filed a motion with the BIA to remand.

On March 23, 2012, the BIA dismissed petitioners' appeal and denied their motion to remand, upholding the IJ's determination that petitioners had failed to show eligibility for asylum or withholding of removal.[2] On April 23, 2012, they petitioned this court for review of the Board's decision. Their petition was dismissed on September 14, 2012, for failure to prosecute. See Djokro v. Holder, No. 12-1484 (1st Cir. Sept. 14, 2012).

Also on April 23, 2012, petitioners filed a motion for reconsideration of the March 23, 2012 Board decision. The Board denied the motion to reconsider in a decision issued on August 9, 2012, finding "no legal or factual defect" in its prior adjudication.

---

[1] The IJ also found that petitioners "ha[d] made no argument with respect to protection under the [CAT]," and so "those applications [were] also denied." In their appeal to the BIA, petitioners did not dispute this finding.

[2] Petitioners argued in their motion for remand that a grant of asylum to Adrianus Djokro, lead petitioner's other son, warranted remand. The BIA disagreed, holding that an "applicant must establish an individualized risk of harm based on the facts of his own case" and petitioners had "concede[d] that the facts [were] different in all three cases."

On November 8, 2012, petitioners filed a motion to reopen the Board's March 23, 2012, order, on the basis that conditions had "deteriorat[ed]" for Christian and Chinese minorities in Indonesia since 2009.

On February 26, 2013, the BIA denied the motion to reopen. The Board held that the motion was untimely, as it was filed more than ninety days after the "final administrative decision" issued on March 23, 2012, see 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2), and that petitioners had not met the requirements for the exception to late filing due to changed country conditions, see 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). The BIA found that the "evidence submitted . . . [was] insufficient to establish changed conditions or circumstances" because it depicted "essentially the same conditions that existed at the time of the . . . hearing in 2009."[3] The BIA also found that there were no "exceptional circumstances" warranting sua sponte reopening under 8 C.F.R. § 1003.2(a).

Hartono and William Djokro remained in the United States and, on July 26, 2021, they filed a second motion to reopen, again based on alleged changed country conditions, or, in the

---

[3]   With respect to petitioners' argument that the grant of asylum to Adrianus Djokro "should be taken into account," the BIA noted that it had already addressed "the same argument" in its prior rulings, and so it "decline[d] to revisit th[e] issue."

alternative, for sua sponte reopening. Almost two years later, on May 22, 2023, they filed a supplement to their motion to reopen.

On August 1, 2023, the BIA denied, as untimely and number barred, petitioners' second motion to reopen, finding on two grounds that petitioners had not shown the exception for changed country conditions applied. The BIA held 1) that "the evidence submitted with the motion [was] insufficient to establish changed conditions or circumstances material to the respondents' eligibility for asylum or withholding of removal," and 2) that "a prima facie case of eligibility for relief ha[d not] been shown," as required to establish the exception. The BIA found that petitioners' evidence dating from 2017 and 2018, "several prior years to the filing of the[] 2021 motion," was "outdated" and so "minimally probative," given that petitioners had "advanced no persuasive argument for why [it] should be considered representative of current conditions." The more recent evidence submitted "d[id] not demonstrate that conditions ha[d] worsened significantly for Indonesian Christians." The BIA noted that the submitted U.S. government reports, by the State Department and the United States Commission on International Religious Freedom, contained countervailing evidence of the Indonesian government's willingness to pursue radical Islamist groups and support religious pluralism, including that a government counterterrorism force pursues those thought to be responsible for attacks on

Christians. And the record showed that the evidence submitted by petitioners of "violence against Christian churches" and "inflammatory rhetoric from fundamentalist groups" was similar to the conditions which existed "at the time of the Immigration Judge's 2009 decision." As to petitioners' contention that "a more fundamentalist version of Islam" had become "popular among youth in Indonesia," the BIA found that "the evidence d[id] not connect this increased popularity to increased persecution of Christians." The Board also considered petitioners' argument based on this court's opinion in Sihotang v. Sessions, 900 F.3d 46 (1st Cir. 2018), which reversed the Board's denial of a motion to reopen an evangelical and proselytizing Indonesian Christian's asylum application, and found the case distinguishable because petitioners "ha[d] not purported to be evangelical Christians or argued that their form of Christianity would involve actions such as proselytizing."

Regarding petitioners' argument based on unpublished BIA decisions, the BIA found them not to be "particularly probative" as they involved "other Indonesian cases with their own unique facts." The BIA further denied sua sponte reopening because petitioners had not shown circumstances warranting that "extraordinary remedy."

This petition for review followed.

We review for abuse of discretion the BIA's denial of a motion to reopen. Garcia-Aguilar v. Whitaker, 913 F.3d 215, 218 (1st Cir. 2019). "[W]e accord considerable deference to the BIA's decision on a motion to reopen . . . ." Guerrero-Santana v. Gonzales, 499 F.3d 90, 92 (1st Cir. 2007). "[I]n effect, . . . such a decision will stand unless the complaining party can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way." Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007).

Subject to limited exceptions, including changed country conditions, petitioners are restricted to a single motion to reopen, which must be filed within ninety days of the date on which the final administrative decision was issued. See 8 U.S.C. §§ 1229a(c)(7)(A), (C)(i); 8 C.F.R. §§ 1003.2(c)(2), 1003.23(b)(1). Motions to reopen based on changed country conditions are not subject to time and number limits if petitioners meet their burden to show certain points. See 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). The burden is on petitioners to establish changed country circumstances, Yang Zhao-Cheng v. Holder, 721 F.3d 25, 28 (1st Cir. 2013), and to connect those circumstances to an "individualized risk of harm," Xin Qiang Liu v. Lynch, 802 F.3d 69, 76 (1st Cir. 2015). To establish changed country conditions, petitioners must present

evidence that the country conditions have "intensified or deteriorated" since their merits hearing. Sihotang, 900 F.3d at 49. The evidence must be material, and cannot have been available at the time of the merits hearing. Id.; see also 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(1). "Once past this procedural hurdle, an alien seeking to secure reopening must present a 'prima facie case sufficient to ground a claim of eligibility for the underlying substantive relief.'" Twum v. Barr, 930 F.3d 10, 21 (1st Cir. 2019) (quoting Raza, 484 F.3d at 128).

We hold that the BIA did not abuse its discretion in finding that petitioners failed to "establish changed conditions or circumstances material to [their] eligibility for asylum or withholding of removal." We need not reach the second ground for the BIA's decision (that is, that petitioners had failed to establish "a prima facie case of eligibility for relief"). The record amply supports the BIA's determination that petitioners have not met their burden of showing that the exception for changed country conditions applies.

Petitioners' argument that the BIA "discount[ed] a substantial portion of [their] evidence" is refuted by the record. The BIA did not ignore petitioners' evidence; instead, the BIA evaluated all the evidence and determined its evidentiary value. Such an evaluation is within the core of the agency's discretion. See Marsadu v. Holder, 748 F.3d 55, 59 (1st Cir. 2014) (discussing

the broad discretion afforded to the BIA on motions to reopen). Petitioners take issue, specifically, with the BIA's characterization of materials from 2017 to 2018 as "outdated." Current conditions in Indonesia must be compared to those that existed at the time of the 2009 merits hearing before the IJ. See Twum, 930 F.3d at 20. It is not an abuse of discretion for the Board to accord lesser weight to evidence that is less recent when reviewing the July 2021 second motion to reopen and the May 2023 supplement. The BIA reasonably considered evidence from 2017 and 2018 to be less probative of current conditions in Indonesia than evidence from 2021 to 2023. Petitioners' "argument amounts to little more than a challenge to how the BIA weighed the evidence, and, for that reason alone, it is unavailing." Marsadu v. Holder, 748 F.3d 55, 59 (1st Cir. 2014).

With respect to the more recent evidence that petitioners submitted, the BIA did evaluate the evidence and the record supports its conclusion that petitioners did not meet their burden to "establish changed conditions or circumstances material to [their] eligibility for asylum or withholding of removal." The BIA stated that the evidence before the IJ at the time of the IJ's 2009 decision "reflected similar violence" and "inflammatory rhetoric" compared to the more recent evidence of persecution of Christians submitted in support of petitioners' 2021 motion to reopen. And, the BIA found, "both now and then the records reflect

that the government has generally investigated, prosecuted, and punished individuals responsible for religious conflict and violence." The BIA noted, for example, that petitioners' evidence referenced a "2021 explosion outside a [Christian] church" that was considered by the government to be a terrorist act, and, indeed, the record showed that "the country's counterterrorism force . . . pursue[s] radical Islamist groups believed responsible" for attacks against Christians. To the extent that petitioners provided evidence that a more fundamentalist version of Islam had become more popular among youth in recent years, the BIA reasonably found that petitioners had failed to establish a connection between that development and the alleged deterioration in "conditions for Christians specifically." The BIA's conclusion that petitioners did not demonstrate a material change in country conditions for Chinese Christians in Indonesia is, then, well supported by the record. See Liu Jin Lin v. Barr, 944 F.3d 57, 62 (1st Cir. 2019) ("It is well settled that the persistence of negative conditions, regardless of how grave they are, is insufficient to establish changed country conditions and, thus, warrant reopening."); Sánchez-Romero v. Sessions, 865 F.3d 43, 46 (1st Cir. 2017) ("[G]rave conditions that remain grave do not equate to intensification of conditions.").

Petitioners also argue that the BIA "ignore[d]" its own prior unpublished decisions in other cases finding there to be

changed country conditions for Christians in Indonesia. But nothing in the record suggests that the BIA completely disregarded this evidence. Rather, the agency explicitly addressed those unpublished decisions and found them not to be "particularly probative" because, among other things, they involved "other Indonesian cases with their own unique facts." In doing so, the BIA "fairly consider[ed] the points raised by the [petitioners] and articulate[d] its decision in terms adequate to allow [this] reviewing court to conclude that the agency . . . thought about the evidence and the issues and reached a reasoned conclusion." Raza, 484 F.3d at 128. No more is needed in this context.

There was no error, either, in the agency's finding that those unpublished decisions were not "particularly probative" evidence in petitioners' case. As the government noted in its brief, eleven of the fifteen unpublished decisions involved factually distinguishable Operation Indonesian Surrender petitioners. Those petitioners had been allowed to reside in the United States under a humanitarian program called Operation Indonesian Surrender, Sihotang, 900 F.3d at 49 n.1, because, as the government's brief notes, their asylum cases had been publicized in Indonesia and they had received threats placing them at an especially high, and individualized, risk of harm. Those petitioners were also named and prevailing parties in Devitri v. Cronen, in which the court stayed their removal proceedings so

that they could move to reopen their immigration proceedings. 289 F. Supp. 3d 287, 290 (D. Mass. 2018).[4] Petitioners in this case do not claim to be associated with Operation Indonesian Surrender and they were not parties to the Devitri litigation.

Further, the remaining unpublished BIA decisions which they cited to the agency as evidence do not discuss the facts of those cases and the evidence submitted in them is not apparent. Petitioners have not shown they are similarly situated in the relevant respects to those prevailing petitioners, and we cannot assume that such is the case. See Tawadrous v. Holder, 565 F.3d 35, 39 n.3 (1st Cir. 2009) (finding that petitioner's "point[ing] to five unpublished BIA orders reopening . . . removal proceedings" was "unavailing" because "he ha[d] not described the particular evidence of changed country conditions submitted in conjunction with those successful motions to reopen"). And the unpublished BIA decisions are also not even a representative sample, as they do not include unpublished decisions finding no changed country conditions.

In addition, because the BIA decisions submitted as evidence are all unpublished, the BIA accords them no precedential

---

4    Of the three remaining unpublished decisions, one concerns a petitioner who, although not a named party in Devitri, "contend[ed] that media attention linking her to Operation Indonesian Surrender" would "dangerously increase[] her risk of recognition and persecution . . . if removed to Indonesia."

- 13 -

value.  Matter of Echeverria, 25 I. & N. Dec. 512, 519 (BIA 2011); Cardona v. Sessions, 848 F.3d 519, 523 n.5 (1st Cir. 2017) (recognizing that "unpublished BIA decisions carry no precedential value").

Contrary to petitioners' argument, the BIA also adequately considered lead petitioner's updated written statement submitted with his motion to reopen.  The BIA explicitly referenced the statement before concluding that "the evidence submitted with the motion [was] insufficient to establish changed conditions" The BIA need not provide commentary on each piece of evidence or "dissect in minute detail every contention that a complaining party advances."  Xin Qiang Liu, 802 F.3d at 77 (quoting Raza, 484 F.3d at 128).

Petitioners also argue that the BIA erred in finding that this court's opinion in Sihotang was distinguishable. Sihotang vacated the BIA's denial of a motion to reopen on the ground it "[had] completely overlooked critical evidence" that the petitioner was "an evangelical Christian, for whom public proselytizing is a religious obligation," and that "country conditions had materially changed with respect to public and private reactions . . . toward evangelical Christians."  900 F.3d at 50-51.

In this case, the BIA correctly found Sihotang to be "distinguishable" because petitioners "ha[d] not purported to be

- 14 -

evangelical Christians or argued that their form of Christianity would involve actions such as proselytizing that would put them at increased risk of running afoul of the increasingly harsh blasphemy laws in Indonesia."  The Board did not err in distinguishing Sihotang on those grounds.  In Sutarsim v. Barr, this court distinguished Sihotang on the grounds that "petitioner . . . ha[d] not submitted any specific evidence that Buddhists, or Chinese Buddhists, . . . face[d] heightened risks in Indonesia."  957 F.3d 311, 315 (1st Cir. 2020).  Sihotang is similarly distinguishable here.

The petition for review of the decision of the BIA is **denied**.