# United States Court of Appeals
## For the First Circuit

No. 13-2085

SENLY SUGIARTO; JEMMY KOROMPIS; JEISY VANYA KOROMPIS,

Petitioners,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Thompson, Lipez and Barron,

Circuit Judges.

Thomas V. Massucci on brief for petitioners.
Julia J. Tyler, Office of Immigration Litigation, Civil Division, United States Department of Justice, Stuart F. Delery, Assistant Attorney General, Civil Division, and Shelley R. Goad, Assistant Director, on brief for respondent.

August 1, 2014

**BARRON, Circuit Judge.**  Petitioner Senly Sugiarto, an Indonesian citizen, unsuccessfully applied for asylum eight years ago.  She now seeks -- along with her husband and daughter[1] -- to have the Board of Immigration Appeals reopen that earlier request.  Because we find no basis for overturning the Board's refusal to do so, we deny her petition for review.

Sugiarto entered the United States on a tourist visa in January 2005, overstayed that visa's expiration, and applied for asylum in January 2006.  At the time of her asylum application, Sugiarto, who is Christian, claimed she would face "persecution . . . on account of . . . religion" if she were removed to Indonesia.  8 U.S.C. § 1101(a)(42)(A).  An Immigration Judge denied her application in mid-2007, and, after the Board of Immigration Appeals affirmed, this Court denied Sugiarto's petition for review on the merits in late 2009.  Sugiarto v. Holder, 586 F.3d 90 (1st Cir. 2009).  Nearly four years later, Sugiarto filed this motion to reopen her asylum request with the Board of Immigration Appeals, which by regulation is authorized to decide such motions.  8 C.F.R. § 1003.2(c)(1).

---

[1] Sugiarto's husband and daughter joined her asylum application as derivative beneficiaries under 8 U.S.C. § 1158(b)(3)(a) and 8 C.F.R. § 1208.21.  They join her petition as well, but their claims are dependant on Sugiarto's, so we analyze the case as if Sugiarto were the sole petitioner.  Ang v. Gonzales, 430 F.3d 50, 52-53 (1st Cir. 2005).

Motions to reopen asylum orders are generally disfavored because they disrupt "'compelling public interests in finality and the expeditious processing of proceedings.'" <u>Guerrero-Santana</u> v. <u>Gonzales</u>, 499 F.3d 90, 92 (1st Cir. 2007) (quoting <u>Raza</u> v. <u>Gonzales</u>, 484 F.3d 125, 127 (1st Cir. 2007)). Thus, such motions must provide evidence material to the asylum claim that was not available at the time of the asylum hearing. 8 U.S.C. § 1229a(c)(7)(A); 8 C.F.R. § 1003.2(c)(1). Sugiarto's motion is especially disfavored, however, because she filed it late. 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2) (motions to reopen must generally be filed within 90 days of the final administrative decision in the initial proceeding). As a result, Sugiarto must clear an additional hurdle. She must first show her motion is based on "changed country conditions arising in [her] country of nationality or the country to which removal has been ordered." 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(iii). In this case, the relevant country is Indonesia.

In denying the motion to reopen, the Board concluded Sugiarto failed to provide sufficient evidence of changed country conditions. Instead, the Board determined the new evidence she supplied was "largely cumulative of the evidence presented when the case was last before the Immigration Judge." We cannot find fault with the Board's assessment of the evidence of changed country

conditions.  We certainly cannot say that the Board's decision was "arbitrary, capricious, or irrational," which is the standard we must apply since we review here for an abuse of discretion.  Raza, 484 F.3d at 127.

To make the required threshold showing, Sugiarto relied primarily on an affidavit by Dr. Jeffrey A. Winters, a professor of political science at Northwestern University and an expert on Indonesia.  Dr. Winters recounts many alarming incidents of religious intolerance in Indonesia, including many that occurred after Sugiarto's hearing before the Immigration Judge on May 18, 2007.  But although the incidents Dr. Winters describes in his affidavit are disturbing, the record shows the Board had reason to conclude they are similar to those described in materials Sugiarto offered at her asylum hearing.  Furthermore, consistent with that conclusion, Dr. Winters acknowledges in his affidavit that "religious extremism" and violence against religious minorities have been problems in Indonesia since at least 2001.  Thus, as with a very similar affidavit from Dr. Winters discussed in Marsadu v. Holder, 748 F.3d 55, 59 (1st Cir. 2014), the Board did not abuse its discretion in finding that the Winters Affidavit showed only what we described in Marsadu as a "mere continuation" of prior conditions, id., or what we have elsewhere described as a "persistence of negative conditions," Lie v. Holder, 729 F.3d 28, 31 (1st Cir. 2013).  Such showings are not enough to demonstrate

the changed country conditions required of untimely motions to reopen.  Marsadu, 748 F.3d at 59; Lie, 729 F.3d at 30-31.

Sugiarto did submit additional evidence to support her motion.  This evidence included affidavits from her brother-in-law, from her friend, and from her uncle.  She also submitted a number of news articles.  But while this evidence also recounts disturbing incidents of religiously motivated violence, here, too, the Board acted within its discretion in finding it lacking.  Some of these additional submissions describe religiously motivated attacks that occurred in Indonesia as many as eight years before her initial application.  These submissions thus reinforce the impression of a persistent problem rather than a recent change.  Other submissions describe incidents without stating when they occurred.  Without that information, these submissions cannot show that conditions in Indonesia changed after Sugiarto's asylum hearing.  And while some of the additional affidavits and articles Sugiarto submitted do refer to attacks that occurred after her asylum hearing, this evidence, like the Winters Affidavit, also does not suffice to demonstrate the Board erred.  The Board had a strong basis to describe this evidence as "cumulative" -- or, put otherwise, to conclude that it demonstrates the continuation of the same conditions described in Sugiarto's initial hearing.

Nor do we find persuasive Sugiarto's contention that the Board's opinion was too cursory.  We have previously explained

that, in denying a motion to reopen, the Board "is not required to dissect in minute detail every contention that a complaining party advances." Id. at 128. All the Board must do is "articulate[] its decision in terms adequate to allow a reviewing court to conclude that the agency has thought about the evidence and the issues and reached a reasoned conclusion." Id. Here, the Board did that: it identified the relevant record materials, and it explained why they were insufficient.

Sugiarto's final challenge is also unavailing. She argues she could show a pattern or practice of religious persecution in Indonesia, see 8 C.F.R. § 1208.13(b)(2)(iii), and thus that the Board erred by requiring her to show an individualized risk of harm. But even if Sugiarto could show a pattern or practice, it would not excuse her failure to show changed country conditions -- the threshold requirement she must satisfy because she was late in filing her motion to reopen. Because we conclude the Board did not abuse its discretion in concluding that Sugiarto failed to make that threshold showing, we must deny her petition for review.