# United States Court of Appeals
## For the First Circuit

No. 16-2416

JUAN MANUEL SÁNCHEZ-ROMERO,

Petitioner,

v.

JEFFERSON B. SESSIONS, III,[*]
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, <u>Chief Judge</u>,
Selya, <u>Circuit Judge</u>,
and McConnell, <u>District Judge</u>.[**]

<u>Theodore J. Murphy</u> on brief for petitioner.
<u>Chad A. Readler</u>, Acting Assistant Attorney General, Civil Division, <u>Eric W. Marsteller</u>, Senior Litigation Counsel, Office of Immigration Litigation, and <u>Rosanne M. Perry</u>, Trial Attorney, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, on brief for respondent.

July 26, 2017

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Jefferson B. Sessions, III, is substituted for former Attorney General Loretta E. Lynch as respondent.

[**] Of the District of Rhode Island, sitting by designation.

**MCCONNELL, District Judge**.    The petitioner, Juan Manuel Sánchez-Romero (Sánchez), seeks review of the Board of Immigration Appeals' (BIA) denial of his untimely motion to reopen removal proceedings based on changed conditions.   Because we do not spot an abuse of discretion, Sánchez's petition is denied.

I.

Sánchez, a Mexican national, entered the United States via Douglas, Arizona, in April 2003, without admission or parole.   On October 17, 2009, United States Customs and Border Protection officers encountered Sánchez at the Luiz Muñoz Marín International Airport in San Juan, Puerto Rico.   That day, Sánchez was served with a Notice to Appear, charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without being admitted or paroled. In addition, Sánchez was charged with removability under 8 U.S.C. § 1182(a)(6)(C)(ii), for falsely representing that he was a citizen of the United States, and 8 U.S.C. § 1182(a)(7)(A)(i)(I), for not possessing a valid, unexpired entry document at the time of application for admission.

On November 10, 2009, Sánchez had a hearing before an immigration judge, where he conceded the charge of removability under 8 U.S.C. § 1182(a)(6)(A)(i) but denied the charges under 8 U.S.C. § 1182(a)(6)(C)(ii) and 8 U.S.C. § 1182(a)(7)(A)(i)(I).

About half of a year later, Sánchez applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT), and on March 24, 2011, he amended his application. In his application, Sánchez stated his fear of criminal gangs (a.k.a. Drug Trafficking Organizations or "DTOs") and the Mexican army, from which Sánchez abandoned his post due to corruption.

According to Sánchez's petition, the criminal gangs killed his brother and sister, and the gangs would target him as well. Sánchez's sister was killed for testifying against a member of a criminal gang, resulting in the gang member's imprisonment. The petition does not state the reason for the death of Sánchez's brother, but it does say that the killer had disappeared. Sánchez also feared that, upon return to Mexico, the gangs would mistake him for a relative of Mariano Rivera, a former baseball player for the New York Yankees, whose family Sánchez befriended. These gangs would, Sánchez thinks, kidnap, extort, and torture him.

In addition to fearing the criminal gangs, Sánchez also believed that he would be harmed by the Mexican army. A sergeant in the army forced Sánchez into dealing drugs, and when Sánchez later refused, he was beaten. As a result of this corruption and abuse, Sánchez left the army. His petition

stated his belief that there would be consequences for leaving the army, including torture.

An immigration judge conducted a merits hearing and denied Sánchez's petition on June 7, 2011. Shortly thereafter, on July 5, 2011, Sánchez appealed the immigration judge's denial. And on March 11, 2013, the BIA, after review, denied Sánchez's appeal. No immediate action was taken by Sánchez.

On August 25, 2016, more than three years after the BIA denied Sánchez's petition, he moved to reopen removal proceedings. In his motion to reopen, Sánchez argued that even though his motion is untimely, his petition to reopen should be granted because the conditions in his home country have deteriorated and intensified. Those purported changed conditions consist of an increase in crime and kidnappings, an increase in power wielded by the DTOs who now operate as a de facto government, and an increase in violence against those who oppose the DTOs. And evidence of the worsened conditions was not available at the time of the last hearing because the evidence relates to events that occurred after the hearing.

After dealing with the timeliness issue, Sánchez's petition went on to discuss the merits of his claims. His application for asylum and withholding of removal was predicated upon persecution for his political opinion -- that is, his stance of opposing the DTOs. As for his CAT claim, Sánchez

-4-

believed that, upon returning to Mexico, he would be at a high risk of torture because of his political opinion and because he would be identifiable as a recent deportee. The torture would be perpetrated by the Mexican government and the DTOs, to whom the government acquiesces.

Ultimately, the BIA denied Sánchez's motion to reopen. The BIA began by noting that Sánchez failed to file his motion within ninety days of the BIA's final decision. As such, this untimeliness acted as a bar to his motion to reopen unless an exception applied. The BIA then went on to consider the exception to the timeliness requirement asserted by Sánchez: the existence of changed conditions since the merits hearing. After considering the evidence submitted by Sánchez, which depicted crime and violence perpetrated by the DTOs, the BIA concluded that Sánchez had failed to demonstrate that the conditions were more than a mere continuation of conditions that existed at the time of his hearing in 2011. The BIA did not, however, stop the analysis there. Instead, the Board went on to consider -- and ultimately reject -- Sánchez's ability to set forth a prima facie case for asylum, withholding of removal, or protection under the CAT.

Now, on appeal, Sánchez claims that the BIA acted arbitrarily in finding that he did not demonstrate changed conditions, abused its discretion by determining that Sánchez

was not eligible for asylum and withholding of removal based on his political opinion, and acted arbitrarily by only focusing on a portion of his CAT claim.

## II.

The BIA is given broad discretion to grant or deny petitions to reopen, and as a result, we review the BIA's decision for abuse of discretion. Cardona v. Sessions, 848 F.3d 519, 521 (1st Cir. 2017). The court will, therefore, uphold the BIA's decision "unless the petitioner can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational manner." Bbale v. Lynch, 840 F.3d 63, 66 (1st Cir. 2016).

A petitioner normally must file a motion to reopen proceedings no later than ninety days after the final administrative order of removal. 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). One exception to this ninety-day rule is materially changed conditions in the petitioner's home country. See Xiao He Chen v. Lynch, 825 F.3d 83, 86 (1st Cir. 2016). To this end, a petitioner must (1) demonstrate changed conditions through evidence that was not available at the original merits hearing and (2) establish a prima facie case of eligibility for relief. Larngar v. Holder, 562 F.3d 71, 74 (1st Cir. 2009). In evaluating changed conditions, "[t]he BIA 'compares the evidence of country conditions submitted with the

motion to those that existed at the time of the merits hearing.'" Xin Qiang Liu v. Lynch, 802 F.3d 69, 76 (1st Cir. 2015) (quoting Haizem Liu v. Holder, 727 F.3d 53, 57 (1st Cir. 2013)).

We begin our analysis -- and end -- with the existence vel non of changed conditions. To meet his burden, Sánchez needs to make a "convincing demonstration" that the conditions in his home country have intensified or deteriorated between his merits hearing on March 24, 2011, and his motion to reopen on August 25, 2016. Tandayu v. Mukasey, 521 F.3d 97, 100 (1st Cir. 2008) (quoting Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007)). Sánchez, claiming error with the BIA's decision to deny his motion to reopen, posits that, because the size and scope of the DTOs' power has increased, the BIA erred in finding a mere continuation of conditions. That is, the DTOs have become -- to quote Sánchez's brief -- "an insurgency threatening the sovereignty of the [Mexican] government." The evidence adduced by Sánchez does not, however, support this assertion.

Sánchez's claim of changed conditions centers on the Mexican government's relations with the DTOs. Beginning in 2006 with the Vincente Fox administration, and then later throughout the Felipe Calderón administration, the Mexican government took a hardline approach to the DTOs, attempting to eradicate the criminal enterprises. This aggressive policy, which sought the

-7-

capture of high-ranking members of the DTOs, caused the organizations to splinter between 2008 and 2010, from four main organizations to as many as eighty organizations (depending on who is counting).  That is to say, the Mexican government's aggressive policy towards the DTOs existed prior to 2011 and so did the splintering of the DTOs.

Nonetheless, Sánchez asserts that, from 2011 until 2016, the DTOs' power has increased and that the DTOs are now supplanting the Mexican government.  He does not, however, cite to evidence in the record to support this contention.  Indeed, on this score, the only article mentioned by Sánchez says that the DTOs possess political influence and, in some instances, operate as de facto security forces.  But this does nothing to take us out of the realm of bad conditions that persist and into the realm of changed conditions.

Instead, Sánchez focuses his efforts on pointing out the rise in kidnappings and murders related to the DTOs.  One article notes that complaints of kidnapping have increased from .89 per day to 3.72 per day.  While these numbers are shocking, the article does not mention over what years the increase occurred.  More to the point, Mexico was dealing with similar levels of kidnappings prior to Sánchez's merits hearing.  For instance, the 2009 Human Rights Report for Mexico reports 8,000 drug-related homicides and 820 kidnappings in 2008, with sources

indicating that kidnappings are vastly underreported. Murder rates have, according to the Mexican government, dropped by thirty-percent in 2012, fifteen-percent in 2013, and fifteen-percent in 2014. Other violent crimes, though, have remained elevated.

Sánchez also highlights the disappearance of individuals in Mexico to evidence changed conditions. One source cited writes that, as of February 2014, the Mexican government confirmed that 26,000 persons remain "disappeared." But the Mexico 2014 Human Rights Report, which reports similar levels of disappearance, notes that the causes of disappearance include voluntary absence, migration, death, and unlawful imprisonment. So the disappearances cannot be solely attributed to the DTOs. Notwithstanding, the 2009 Human Rights Report also indicates that issues of disappearance existed in 2009 -- well before Sánchez's merits hearing in 2011.

Accordingly, the record does not support Sánchez's claim that crime and violence perpetrated by the DTOs in Mexico represent changed conditions from 2011 to 2016. As noted by the BIA, the evidence submitted by Sánchez does showcase the "influences and activities of crime and violence by criminal organizations in Mexico." But grave conditions that remain grave do not equate to intensification of conditions. See Mejía-Ramaja v. Lynch, 806 F.3d 19, 21 (1st Cir. 2015). After

-9-

reviewing the evidence of record, the Court finds that the BIA acted well within its discretion.

Because the BIA properly exercised its discretion and found that Sánchez failed to demonstrate changed conditions, the BIA did not need to determine whether Sánchez made out a prima facie case for eligibility. Yang Zhao-Cheng v. Holder, 721 F.3d 25, 29 (1st Cir. 2013). This Court, having discerned no abuse of discretion, likewise, need not examine Sánchez's remaining assignments of error. See Haizem Liu, 727 F.3d at 58.

## III.

For the reasons set forth above, Sánchez's petition is **denied**.