# United States Court of Appeals
## For the First Circuit

No. 18-1086

MARIA LETICIA GARCIA-AGUILAR,

Petitioner,

v.

MATTHEW G. WHITAKER,
ACTING ATTORNEY GENERAL,*

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Thompson, Selya, and Barron,
Circuit Judges.

Randy Olen on brief for petitioner.
Joseph H. Hunt, Assistant Attorney General, Civil Division, Ernesto H. Molina, Jr., Deputy Director, Office of Immigration Litigation, and Nancy N. Safavi, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

January 16, 2019

---

* Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney General Matthew G. Whitaker has been substituted for former Attorney General Jefferson B. Sessions, III as the respondent.

**SELYA**, **Circuit Judge**.  The petitioner, Maria Leticia Garcia-Aguilar, is a Mexican national.  She seeks judicial review of a decision of the Board of Immigration Appeals (BIA) denying her untimely motion to reopen removal proceedings — a motion grounded upon her claim that country conditions in her native land had materially changed, thus making her newly eligible for asylum.  After careful consideration, we deny the petition.

We set the stage.  The petitioner entered the United States illegally in 2005 near El Paso, Texas.  Following a 2007 raid at the factory where she worked, the Department of Homeland Security initiated removal proceedings against her.  The petitioner denied the factual allegations underpinning the government's case for removal.  Relatedly, she moved to suppress some of the evidence upon which the government sought to rely, claiming that the evidence had been procured in violation of her constitutional rights.

On August 11, 2009, the petitioner's first merits hearing was held before an immigration judge (IJ).  The IJ denied the motion to suppress, ordered the petitioner removed to Mexico, and granted her the privilege of voluntary departure.  The petitioner appealed to the BIA, which vacated the IJ's decision and remanded the case for reconsideration of the motion to suppress, including the underlying constitutional issues.

The petitioner had another merits hearing on February 17, 2012. The IJ reconsidered facts pertinent to the petitioner's motion to suppress and determined that the evidence used against her was admissible. In the end, the results of this second merits hearing reprised the results of the petitioner's first merits hearing: on February 1, 2013, the IJ denied the petitioner's motion to suppress, ordered her removed, and granted voluntary departure.

Once again, the petitioner appealed the IJ's decision to the BIA. Nearly a year later, the BIA upheld the IJ's decision. Undaunted, the petitioner sought judicial review. See 8 U.S.C. § 1252(b)(4). On November 25, 2015, we denied her petition. See Garcia-Aguilar v. Lynch, 806 F.3d 671, 677 (1st Cir. 2015).

The matter did not end there. Almost two years later (on August 28, 2017), the petitioner filed a motion to reopen, arguing that a dramatic shift in conditions in Mexico — specifically, an increase in kidnappings and murders due to violence associated with drug cartels and gangs — made her newly eligible for asylum. In support of her nascent asylum claim, she alleged a fear of persecution based on her imputed "American nationality." To flesh out this claim, she further alleged that she had lived in the United States since 2005; that she was the mother of an American-born child; and that she had an older child who, though born in Mexico, had resided in the United States since infancy.

- 3 -

The BIA denied the motion to reopen. It noted that the motion was untimely and went on to hold that the evidence that the petitioner submitted failed to achieve the level of proof needed for the granting of an untimely motion to reopen. In the BIA's view, the submitted evidence did "not establish materially changed circumstances or changed country conditions arising in Mexico since [the petitioner's] merits hearing below." Taking a belt-and-suspenders approach, the BIA also concluded that the petitioner had failed to explain how her imputed American nationality would make her risk of persecution different from that of the general population in Mexico. So, too, the BIA concluded that the petitioner had failed to show a nexus between the persecution that she allegedly feared and a statutorily protected ground for asylum. See 8 U.S.C. § 1158(b)(1)(B)(i).

This timely petition for judicial review ensued. In it, the petitioner seeks review only of the BIA's denial of her motion to reopen.

Motions to reopen are disfavored in immigration practice. See Sihotang v. Sessions, 900 F.3d 46, 48 (1st Cir. 2018); Xiao He Chen v. Lynch, 825 F.3d 83, 86 (1st Cir. 2016). After all, reopening a proceeding is "contrary to 'the compelling public interests in finality and the expeditious processing of [removal] proceedings.'" Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007) (quoting Roberts v. Gonzales, 422 F.3d 33, 35 (1st Cir.

2005)).  Despite these drawbacks, motions to reopen are allowed under some circumstances.  See 8 U.S.C. § 1229a(c)(7).

Withal, those circumstances are narrowly circumscribed. Of particular pertinence for present purposes, motions to reopen are time-limited in immigration cases.  See id. § 1229a(c)(7)(C)(i) (providing that such a motion ordinarily must be filed within 90 days of the final order in the proceeding sought to be reopened); see also 8 C.F.R. § 1003.2(c)(2).

The uphill climb that a petitioner faces when seeking to reopen removal proceedings — steep in any event — is steeper still where, as here, she seeks to reopen after the time for moving to reopen has expired.  See Sihotang, 900 F.3d at 48.  In such circumstances, the petitioner must jump through two hoops.  First, she must adduce material evidence, previously unavailable, showing changed country conditions in her homeland.  See 8 C.F.R. § 1003.2(c)(3)(ii); Sugiarto v. Holder, 761 F.3d 102, 103 (1st Cir. 2014).  Second, she must make out a prima facie case of eligibility for the substantive relief sought.  See Sihotang, 900 F.3d at 50.

"We afford the BIA 'wide latitude in deciding whether to grant or deny such a motion'" and review its decision only for abuse of discretion.  Id. at 49 (quoting Bbale v. Lynch, 840 F.3d 63, 66 (1st Cir. 2016)).  To prevail under this deferential standard, "the petitioner must show that the BIA either 'committed

an error of law or exercised its judgment in an arbitrary, capricious, or irrational manner.'" Id. at 50 (quoting Bbale, 840 F.3d at 66).

Here, the final agency order was dated January 15, 2014, and the motion to reopen was filed more than three years later. Thus, the motion to reopen was well out of time. See 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2).

To satisfy the first requirement, the petitioner — who bears the burden of proof — must submit evidence of changed country conditions material to the underlying substantive relief that she seeks; show that such evidence was unavailable or undiscoverable during the prior proceedings; and show that the change was more than a continuation of previously existing conditions. See Xiao He Chen, 825 F.3d at 86-87; see also Raza, 484 F.3d at 127. To determine whether the petitioner has carried this multifaceted burden, the BIA is obligated to compare "evidence of country conditions submitted with the motion to those that existed at the time of the merits hearing." Sihotang, 900 F.3d at 50 (quoting Sánchez-Romero v. Sessions, 865 F.3d 43, 46 (1st Cir. 2017)).

Here, however, there is a stumbling block: before embarking upon our analysis, we must identify the particular merits hearing that forms the baseline for assessing the existence vel non of changed country conditions. This uncertainty arises out of the fact that the petitioner had two separate merits hearings

- 6 -

before the IJ, resulting in two separate decisions. Her first merits hearing took place in 2009 and her second merits hearing took place in 2012. Each of these hearings culminated in an order of removal. When it denied the petitioner's motion to reopen, the BIA did not distinguish between these two merits hearings but, rather, referred generically to the "merits hearing below." By the same token, the petitioner does not identify which hearing she views as the operative one.

Logic suggests that the more recent (2012) merits hearing should establish the baseline for the petitioner's motion to reopen. The government agrees: its brief leaves no doubt that it considers the 2012 hearing as the baseline hearing. Indeed, its brief does not so much as mention the 2009 merits hearing. The petitioner had an opportunity to file a reply brief contesting this view, see Fed. R. App. P. 31(a)(1), but she chose not to do so. What is more, she acknowledges that the overwhelming bulk of the country conditions information submitted to the BIA depicts changes in Mexico that have taken place during the five years next preceding — a time span roughly equivalent to the period beginning with the 2012 merits hearing and ending with the filing of the 2017 motion to reopen. Against this backdrop, we conclude that the 2012 merits hearing sets the baseline for the "changed country conditions" inquiry.

With this baseline in place, we turn to the petitioner's motion to reopen. In that motion, the petitioner indicated that the substantive relief sought was asylum. The fact that she had not sought asylum during the earlier removal proceedings does not, in and of itself, pretermit her claim. After all, an alien may "apply or reapply for asylum" in a motion to reopen. 8 C.F.R. § 1003.2(c)(3)(ii). It follows that the petitioner had a right to advance her claim for asylum for the first time in her motion to reopen. See Smith v. Holder, 627 F.3d 427, 439 n.13 (1st Cir. 2010).

Because the petitioner did not seek asylum at all during the 2012 merits hearing, the record of that hearing contains no direct evidence of country conditions then existing in Mexico. This does not mean, though, that such evidence was either unavailable or undiscoverable. Indeed, the petitioner has not suggested that accurate information concerning country conditions in Mexico was either unavailable to her or undiscoverable by her at the time of the 2012 merits hearing. And in any event, the petitioner's 2017 submissions to the BIA indicate with sufficient clarity that gang and drug-cartel violence (including murders and kidnappings) in Mexico was both prevalent and well-publicized at and before the time of the 2012 merits hearing.[1]

_____

[1] It is true that many of the reports and articles proffered by the petitioner were published in 2014 or thereafter. But

- 8 -

Nor does the petitioner deny that conditions in Mexico were going downhill as early as 2011. Rather, she argues that country conditions grew increasingly grim between the date of the 2012 merits hearing and the date on which she moved to reopen. To buttress her contention that conditions in Mexico deteriorated during the relevant period, the petitioner submitted an array of reports from government agencies and advocacy groups, along with media articles. These materials, collectively, describe the parlous conditions resulting from drug and gang violence in Mexico.

This proffer falls short. Although some of the submitted documents depict an increase in the rate of murders and kidnappings beginning around 2015, others describe the violence as intensifying around 2011 and persisting since that time. For example, one such article not only noted an uptick in murders in 2016 but also noted that the rate of killings was lower than it was "in the first halves of 2011 and 2012, when the drug war's violence" peaked. Other articles support this statement, relating that there were 27,213 murders in 2011, 20,670 murders in 2014, and around 23,000 murders in 2016. So, too, with respect to kidnappings, another report, published in March of 2017, commented that "Mexico has consistently featured in the top kidnapping

nothing indicates that the facts summarized in those reports and articles, insofar as they reflect conditions existing in and around 2012, were either unavailable or undiscoverable at the time of the petitioner's 2012 merits hearing.

hotspots globally for several years."  Here, as in Sánchez-Romero — a case that also considered evidence of gang-related violence in Mexico — the proffered documents do not clearly "take us out of the realm of bad conditions that persist and into the realm of changed conditions."  865 F.3d at 47.

We add a coda.  Even though there may have been an uptick in violence between 2012 and 2017, the petitioner's burden was to show more than just an incremental change in country conditions: she had to show a material change in country conditions.  See Mejía-Ramaja v. Lynch, 806 F.3d 19, 21 (1st Cir. 2015); Haizem Liu v. Holder, 727 F.3d 53, 57 (1st Cir. 2013); Smith, 627 F.3d at 435-36.  In this regard, materiality has two dimensions.  First, the evidence must show a degree of change that is sufficiently substantial to be material.  See Tawadrous v. Holder, 565 F.3d 35, 38 (1st Cir. 2009).  Second, the evidence must be such as to demonstrate a change that is material to the underlying substantive relief that the petitioner seeks (here, asylum).  See Raza, 484 F.3d at 127.

On this record, it was within the BIA's discretion to conclude that the petitioner had not carried either aspect of her burden.  To satisfy the first aspect, she would have had to show a material increase in the incidence of violence, see Sánchez-Romero, 865 F.3d at 46-47, and the BIA found (at least implicitly) that she failed to do so.  To satisfy the second aspect, the

petitioner would need to show that any change in country conditions would impact her uniquely because of her imputed American nationality. See Smith, 627 F.3d at 435-36; Raza, 484 F.3d at 127-28. Here, however, her submissions wholly fail to make such a showing. As late as 2017, the State Department Country Conditions Report, introduced by the petitioner, noted the absence of any "evidence that criminal organizations have targeted U.S. citizens based on their nationality."

In sum, we discern neither an error of law nor an abuse of the BIA's wide discretion. The documents that the petitioner proffered plausibly may be read to suggest "a persistent problem rather than a recent change." Sugiarto, 761 F.3d at 104. Moreover, those documents do not forge anything resembling a solid link between an alleged change in country conditions and the petitioner's underlying claim for asylum. For these reasons, we cannot say that the BIA acted erroneously, arbitrarily, capriciously, or irrationally in determining that the petitioner failed to demonstrate a material change in country conditions.

In an effort to blunt the force of this reasoning, the petitioner asserts that the BIA ignored her evidentiary submissions. In her counsel's words, the BIA "offer[ed] no indication that the evidence was considered carefully, or even at all."

We do not agree.  An agency is not required to parse an alien's submissions one by one and cite book and verse when rejecting the alien's conclusions.  See Raza, 484 F.3d at 128.  As relevant here, the BIA was under no obligation to dismantle the petitioner's proffer and separately analyze the component parts of that proffer.  See Sugiarto, 761 F.3d at 104.  "It is enough if the agency fairly considers the points raised by the complainant and articulates its decision in terms adequate to allow a reviewing court to conclude that the agency has thought about the evidence and the issues and reached a reasoned conclusion."  Raza, 484 F.3d at 128; cf. Fen Tjong Lie v. Holder, 729 F.3d 28, 30 (1st Cir. 2013) (observing that even though "[t]he BIA's decision was concise . . . that does not make it cursory").

The BIA's decision passes muster under this standard. Its decision refers explicitly to various items of evidence submitted by the petitioner and offers a reasoned basis for denying the motion.  On this record, it is rank speculation to assert that the BIA failed to consider the materials submitted by the petitioner.  And it is equally speculative to assert that the BIA rejected the petitioner's argument for any reason other than its conclusion that the argument was unpersuasive.  No more was exigible.

We need go no further.[2]  For the reasons elucidated above, the petition for judicial review is

**<u>Denied</u>.**

---

[2] Because the BIA supportably found that the petitioner failed to carry her threshold burden of showing materially changed country conditions, we need not reach other issues such as those pertaining to the petitioner's "nexus" showing and her prima facie case for asylum.

- 13 -