# United States Court of Appeals
## For the First Circuit

No. 19-1216

LIU JIN LIN,

Petitioner,

v.

WILLIAM P. BARR,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lipez, and Kayatta,
Circuit Judges.

Gary J. Yerman and The Yerman Group, LLC on brief, for petitioner.
Sharon M. Clay, Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Joseph H. Hunt, Assistant Attorney General, Civil Division, and Nancy E. Friedman, Senior Litigation Counsel, on brief, for respondent.

December 10, 2019

**TORRUELLA**, **Circuit Judge**.  Liu Jin Lin ("Lin"), a native and citizen of China, petitions for review of a Board of Immigration Appeals ("BIA") order denying as untimely her motion to reopen her earlier removal proceedings because of the intersection between her recent conversion to Christianity and changed country conditions in China regarding religious persecution.  Because the BIA did not abuse its discretion in denying Lin's motion, we deny her petition for review.

## I.

Lin was born in Changle City, Fujian Province, China. She entered the United States on November 28, 2001 on a K-1 fiancée visa, which authorized her to remain in the country for ninety days.  However, Lin overstayed her visa.

In the fall of 2003, Lin met her husband Wenqiang Weng, whom she married on October 1, 2007, in Quincy, Massachusetts. They have two sons together, one born in 2006 and the other in 2008. On December 22, 2013, Lin's husband converted to Christianity and subsequently brought his family to the Greater Boston Christ's Mandarin Church. Lin and her family moved to Sharon, Massachusetts, and have since regularly attended the Chinese Church of Metro South Boston.  Through the church, Lin also participates in the Sisterhood Bible study every Tuesday and joins the priest's wife on Thursdays for prayer and Bible study.  On November 12, 2017,

Lin was baptized in the Christian faith. She now preaches her faith to her sister at family meetings.

According to Lin, she fears that she will face persecution if she were to return to China because she would only attend unregistered, or underground, Christian churches.

## II.

On December 3, 2007, the Department of Homeland Security ("DHS") served Lin with a Notice to Appear charging her as removable under section 237(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1127(a)(1)(B). After receiving the Notice to Appear, Lin applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), fearing persecution due to her violation of China's family planning policies. On March 25, 2011, the Immigration Judge ("IJ") found that Lin could be prevented from giving birth to future children due to China's family planning policies and granted her application for asylum. DHS appealed the IJ's decision to the BIA.

On September 27, 2012, the BIA sustained DHS's appeal, vacated the IJ's decision, and ordered Lin removed to China. Lin filed a petition for review with this Court that was denied on July 23, 2013. See Liu Jin Lin v. Holder, 723 F.3d 300, 308 (1st Cir. 2013).

Several years later, on May 4, 2018, Lin filed a motion to reopen with the BIA based on her view that allegedly changed country conditions in China would impact her given her recent conversion to Christianity. The BIA denied Lin's motion to reopen, finding that it was time-barred and that the evidence Lin had submitted of changed country conditions since her removal proceedings in 2011 did not support an exception to the time limits. The BIA found that the evidence reflected that "although there have been reports of the detention of some members, mostly leaders, of underground, or 'house,' churches and harassment of some church members," "China continues to allow the practice of Christianity." Furthermore, "the restrictions on unregistered religious groups differed in degree and varied significantly from region to region," and these restrictions had persisted for many years. The BIA also found that "the evidence indicates that government interference in unregistered churches and harassment of some underground church members has been a longstanding concern, including at the time of [Lin]'s 2011 proceedings."

In addition, the BIA noted that Lin had the burden of proof to establish prima facie eligibility for the underlying substantive relief requested, yet she had failed to establish prima facie eligibility for asylum, withholding of removal, or protection under the CAT. With regards to her request for asylum

-4-

and withholding of removal, the BIA found that "the evidence of the repression of underground religious activities" was insufficient to demonstrate that Lin had a "well-founded fear of mistreatment amounting to persecution upon her return to China based on her practice of Christianity." The BIA further found that the evidence was also insufficient to demonstrate that "it [was] more likely than not that [Lin] w[ould] be tortured in China by, or with the acquiescence or willful blindness of, a public official or person acting in an official capacity upon her return" as required for eligibility under the CAT. Lin now petitions for review of the BIA's order.

## III.

Motions to reopen removal proceedings are disfavored because they impinge upon "the compelling public interests in finality and the expeditious processing of proceedings." Guerrero-Santana v. Gonzales, 499 F.3d 90, 92 (1st Cir. 2007) (quoting Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007)). Accordingly, "we review the BIA's denial of a motion to reopen under a highly deferential abuse-of-discretion standard," Pineda v. Whitaker, 908 F.3d 836, 840 (1st Cir. 2018), upholding the decision "unless the complaining party can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way," Raza, 484 F.3d at 127.

-5-

In conducting this review, this Court "accept[s] the BIA's findings of fact, 'as long as they are supported by substantial evidence,' and . . . review[s] legal conclusions de novo." Marsadu v. Holder, 748 F.3d 55, 57-58 (1st Cir. 2014) (quoting Smith v. Holder, 627 F.3d 427, 433 (1st Cir. 2010)). "It is enough if the agency fairly considers the points raised by the complainant and articulates its decision in terms adequate to allow a reviewing court to conclude that the agency has thought about the evidence and the issues and reached a reasoned conclusion." Raza, 484 F.3d at 128.

Generally, a petitioner may only file one motion to reopen, and that motion must be filed within ninety days of the date of entry of the final administrative order of removal. See 8 U.S.C. § 1229a(c)(7)(C)(i). However, this limitation does not apply to a motion to reopen to apply or reapply for asylum or withholding of deportation "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous hearing." Id. § 1229a(c)(7)(C)(ii). In such a case, the motion to reopen must (1) "adduce material evidence, previously unavailable, showing changed country conditions" and (2) "make out a prima facie case of eligibility for the [underlying] substantive

-6-

relief." García-Aguilar v. Whitaker, 913 F.3d 215, 218 (1st Cir. 2019).

"To establish changed conditions, the evidence must demonstrate 'the intensification or deterioration of country conditions, not their mere continuation.'" Xin Qiang Liu v. Lynch, 802 F.3d 69, 76 (1st Cir. 2015) (quoting Tawadrous v. Holder, 565 F.3d 35, 38 (1st Cir. 2009)). To determine whether conditions have intensified or deteriorated, the BIA "compares the evidence of country conditions submitted with the motion to those that existed at the time of the merits hearing." Haizem Liu v. Holder, 727 F.3d 53, 57 (1st Cir. 2013) (alteration omitted) (quoting In re S-Y-G, 24 I. & N. Dec. 247, 253 (BIA 2007)). "Those changes, however, must be material to the underlying substantive relief . . . and the evidence tendered in support thereof must have been unavailable during the prior proceedings." Raza, 484 F.3d at 127. Conclusory assertions are not sufficient: "the evidence proffered in support of the motion must, at a bare minimum, establish a prima facie case sufficient to ground a claim of eligibility for the underlying substantive relief." Id.

**IV.**

Lin argues that the BIA abused its discretion in concluding that she had failed to establish that country conditions in China had materially changed and thus denying her motion to

-7-

reopen.[1]  She contends that the evidence she submitted clearly establishes that conditions in China have materially deteriorated for underground Christians since 2011.  In her view, the BIA reached the opposite conclusion because it merely performed a "cursory" review of the evidence, referred to the documents "in the aggregate," and "ignored" the Department of State 2009 Human Rights Report on China, even though that report was "vital" to the BIA's determination of changed conditions and had been cited in her motion to reopen.

The BIA did not abuse its discretion.  Contrary to Lin's suggestions, "the BIA is under no obligation 'to parse an alien's submissions one by one and cite book and verse when rejecting the alien's conclusions.'"  Nantume v. Barr, 931 F.3d 35, 40 (1st Cir. 2019) (quoting García-Aguilar, 913 F.3d at 221).  And here, the BIA did not perform a cursory review of the evidence.

---

[1]  Although Lin does not argue that her recent conversion to Christianity constitutes a change in conditions for purposes of her motion to reopen, we clarify that such "change in personal circumstances alone does not meet the standard for the exception to the time bar for changed country conditions." Rei Feng Wang v. Lynch, 795 F.3d 283, 286-87 (1st Cir. 2015) ("Under the case law, a change typically will be categorized as a change in personal circumstances, as opposed to a change in country circumstances, if the change is self-induced. . . . This prevents aliens from repeatedly reopening their removal proceedings based on changes that are within their control." (alteration in original) (internal quotation marks omitted) (quoting Ming Chen v. Holder, 722 F.3d 63, 66 (1st Cir. 2013))).

Instead, it explicitly identified and considered the evidence that Lin had submitted in support of her motion to reopen, referencing specific exhibits and pages in the record. It also took administrative notice of the Department of State 2009 Human Rights Report on China, which -- despite characterizing it as "vital" -- Lin had not included.

The evidence in the record, including several government reports and articles from 2009 to 2017 outlining the conditions in China and referencing the newly-enacted National Security Law and its amendments pointed to by Lin, supports the BIA's finding. The evidence shows that religious persecution has existed in China for many years, predating Lin's original hearing in 2011, and has not sufficiently increased since then to constitute a material change in country conditions. Specifically, each of the reports from 2009 to 2017 reference the government's interference in underground Christian churches in China, including harassment against underground church members and the arrest, detention, and imprisonment of church leaders even before the enactment of the new National Security Law that Lin references in her brief. It is well settled that the persistence of negative conditions, regardless of how grave they are, is insufficient to establish changed country conditions and, thus, warrant reopening. See Fen Tjong Lie v. Holder, 729 F.3d 28, 30-31 (1st Cir. 2013);

see also Sánchez-Romero v. Sessions, 865 F.3d 43, 46 (1st Cir. 2017) ("[G]rave conditions that remain grave do not equate to intensification of conditions.").

Accordingly, the BIA did not abuse its discretion in finding that Lin's motion to reopen removal proceedings was time-barred.[2]

**V.**

For the reasons stated above, Lin's petition for review is **denied**.

---

[2] Because Lin has failed to establish a material change in country conditions, there is no need "to reach the issue of whether she has made out a prima facie case for relief." Haizem Liu, 727 F.3d at 58.